# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

JOHN BRANDT,      :
     :
     Plaintiff,      :
     :      Civ. No. 22-3752 (KM) (JRA)
     v.      :
     :      **OPINION**
GUY CIRILLO, et al.,      :
     :
     Defendants.      :
     :

**KEVIN MCNULTY, U.S.D.J.**

Plaintiff John Brandt, a pretrial detainee at Hudson County Correctional Facility ("HCCF"), filed a complaint asserting claims under 42 U.S.C. § 1983, the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101 *et seq.*, and the Rehabilitation Act, 29 U.S.C. §§ 701 *et seq*, related to his "max custody" security classification and resulting "general population on the max unit" housing assignment while he was a pretrial detainee at Essex County Correctional Facility ("ECCF"). DE 7. He asserts claims against the following defendants: (1) Guy Cirillo, ECCF warden; (2) Tony Brown, ECCF assistant warden; (3) Antonio Pires, ECCF associate warden, (4) Alfaro Ortiz, Jr., ECCF security director; (5) Lionel Anicette, ECCF medical director (collectively, with Cirillo, Brown, Pires, and Ortiz, the "Administrative Defendants"); (6) Officer Bivona, Jr., who oversees inmate classification at ECCF; and (7) Lt. Crawford,[1] who also oversees inmate classification at ECCF.[2]

In a previous order (DE 5), I denied Brandt's motion to proceed in forma pauperis ("IFP") (DE 1-1) and dismissed his complaint (DE 1) without prejudice because the IFP application and

---

[1] Brandt refers to Crawford as both "Lt. Crawford" and "Officer Crawford." *See, e.g.*, DE 7 at 1, 10, 24.

[2] Brandt also names "John and Jane Doe 1–19" in the caption, but does not specify in the complaint any unknown individuals against whom he intends to assert claims. DE 7 at 1.

complaint were not submitted on the appropriate forms. Brandt has now submitted his IFP application and complaint on the proper forms. DE 7, 7-1. For the reasons below, Brandt's motion to proceed IFP is granted, and his complaint is dismissed without prejudice.

## I.    IFP

A prisoner seeking to file a civil action IFP must submit (a) an affidavit, including a statement of all assets, stating that the prisoner is unable to pay the fee, and (2) a certified copy of his inmate trust fund account statement for the six-month period immediately preceding the filing of his complaint. 28 U.S.C. § 1915(a)(1) & (2). Brandt has complied with these requirements. DE 7-1. Accordingly, Brandt's IFP motion is granted. I nonetheless must screen the complaint, as further explained below.  *See* 28 U.S.C. § 1915A(a).

## II.    The Complaint

The complaint contains the following factual allegations, which, for screening purposes, I accept as true.

### A.    Factual Background

#### 1.    Pretrial Detention from July 8, 2021, through September 28, 2021

Brandt was confined at ECCF on July 8, 2021, on what he describes as a "non-violent" third-degree burglary charge. DE 7 at 10. He was "transferred to a max custody status unit, that were mostly homicide charges and violent offenders." *Id*. He requested a transfer to a less restrictive ECCF-managed facility called Delaney Hall.[3] *Id.* at 11. "The custody officer or person responding to the request by the inmate tablet indicated that [Brandt] was not eligible due to his

---

[3] Brandt describes the conditions at Delaney Hall as follows: "The rights and privileges . . . are never restricted or restrained"; the "recreation and library area [are] always available"; and "the[] freedom and liberty interest to be free from lockdowns or isolation is never denied." DE 7 at 19. "There are a multitude of privileges and rights granted to the inmates at Delany Hall; such as access to [a] vending machine, programs, and services and reintegration assistance and planning." *Id*.

max custody status and criminal history." *Id.* at 11. Brandt filed a grievance, arguing that he was not properly classified and his "criminal background alone" could not be used to deny him placement at Delaney Hall. *Id.* He was released from detention on September 28, 2021, having been detained for less than three months. *Id.* at 10.

### 2. Pretrial Detention from February 24, 2022, through August 16, 2022[4]

Brandt was re-detained at ECCF about five months later, on February 24, 2022, as a pretrial detainee on another third-degree burglary charge. DE 7 at 10. He was not screened upon initial intake and was placed in a holding area with 20 to 30 inmates who had also not been screened. *Id*. He was then quarantined for approximately two weeks. *Id.* at 12. "Based on his criminal background, which included a not guilty by reason of insanity" ("NGRI"), Brandt was placed on "max custody" "in general population on the max unit." *Id.* at 12. The Administrative Defendants were "required to review [Brandt's] custody level every 30 days"; however, he was not "seen by anyone." *Id.* at 11. He requested a minimum or medium custody classification and transfer to Delaney Hall, but the Administrative Defendants denied his "review and custody status and transfer request and grievance by way of the inmate tablet." *Id.* at 12.

### a. Classification Policy and Brandt's Max Custody Status

Brandt alleges that the Administrative Defendants have "an obligation to create, implement, train, and oversee that there . . . is a classification policy and procedures at ECCF that are adequate and in accordance with law." *Id.* They "have failed to do [this] . . . and have

---

[4] Brandt's complaint is drafted using the present tense during this period of pretrial detention, i.e.: "Plaintiff is currently re-detained on a new charge at ECCF as pretrial detainee . . . since February 24th, 2022." DE 7 at 11. However, it seems clear that he is referring to a past period of detention, as he later states he was "released from ECCF . . . on August 16th, 2022," and "was subsequently arrested on September 29th, 2022, . . . and was ordered detained at [HCCF]." *Id.* at 22. It appears then, that Brandt's total period of detention at ECCF was less than nine months, i.e., from July 8 to September 28, 2021, and then again from February 24 to August 16, 2022.

actual knowledge and personal involvement of said failures," as evidenced by Brandt's "numerous request[s] and grievances." *Id.* at 13. Brandt was "informed by his regular unit officer, that he is unaware of any classification committee or if ECCF actually has one. . . . No one is aware of a classification committee or staff members at ECCF that classify inmates." *Id.*

Brandt "was not classified by any subjective criteria . . . other than his criminal background and that is antiquated." *Id.* at 15. He "was not reviewed by classification committee personally, by notice, or any other meaningful way to respond." *Id.* He "received no explanation, hearing, or respond [sic] to any allegations or review." *Id.* "There was no subjective inquiry into the mental state of the defendants in order to make a valid discretionary decision." *Id.* at 16. There "was no subjective evaluation" of Brandt "in order to make a valid determination of prediction of future behavior and no opportunity to present his views personally at each review." *Id.* at 16–17. The Administrative Defendants "have failed to provide [Brandt] with any process to address his placement on max custody status." *Id.* at 17.

"The only difference between [Brandt's] criminal background; which is minor in comparison to some inmates at Delaney Hall, is he has been found [NGRI] for a burglary offense due to his disability. The defendants are aware of this fact . . . because it is in his criminal background that they keep saying makes him ineligible." *Id.* at 18.

### b.   ECCF Conditions

Brandt was "a role model inmate," yet he was "locked in a jail cell at a minimum of 23 hours a day on average" and "as the result of too many inmates," he only had access to the recreation area "maybe every other day for about 30 minutes." *Id.* at 19–20. The defendants do not classify inmates and screen them for a propensity for violence. *Id.* at 20. This resulted in Brandt being locked down and isolated for weeks at a time. *Id.* The defendants' "way of

managing the facility was lock the facility down, rather than screen and classify dangerous individuals as the result of mental health problems or propensity for violence." *Id*.

Because Brandt has been "diagnosed with a mental health condition," he "should not have been placed on lock down for prolonged periods with no mental health treatment . . . as it fosters mental health problems and violence." *Id.* at 20. Due to this "denial of treatment and extreme isolation," Brandt suffers from "serious mental anguish, psychological and emotional distress, fear, anxiety, embarrassment, severe emotional trauma, and loss of enjoyment of life," "which is permanent." *Id.* at 21.

Brandt was released from ECCF on August 16, 2022, "while on max custody status with no opportunity to rehabilitate and progress, but with every opportunity and propensity for recidivism." *Id.* at 22. He was again arrested about six weeks later, on September 29, 2022, and detained at HCCF. DE 7 at 22.

### 3.    Pretrial Detention from September 29, 2022, through Present

Brandt's September 2022 arrest was "once again for a non-violent [third-degree] burglary offense." DE 7 at 22. He was "ordered detained at [HCCF], where he was "screened within an hour by a nurse, placed on a medical unit within two hours for detox; and about a week later was classified by the Hudson County administrators" and "placed on minimum custody status." *Id.* Brandt "then requested to be placed in the integrity program within the HCCF, which is in the least restrictive setting and conditions of confinement." *Id.* His request was approved and he "was transferred and is participating in such services and programming." *Id.*

### B.    The Claims

Brandt asserts (1) due process claims against the Administrative Defendants in their individual and official capacities for their alleged failure to classify Brandt properly (Count I)

(DE 7 at 9–10, 23) and for causing Brandt to suffer excessive isolation (Count IV) (*id.* at 25); (2) due process claims against all defendants for failing to consider less restrictive conditions of confinement (Count V) (*id.* at 26); (3) due process claims against Bivona and Crawford for failing to exercise administrative discretion (Count II) (*id.* at 24); (4) equal protection claims against Bivona and Crawford for failing to afford him the same rights as similarly situated detainees (Count II) (*id.* at 24); and (5) ADA and Rehabilitation Act claims against all defendants for discriminating against Brandt based on his "disability" (Count III) (*id.* at 25). Brandt does not specify what disability he claims to have, but elsewhere in the complaint, *see, e.g.*, *id.* at 8, he explains that he had been found NGRI "as a result of a disability," thus presumably he refers to an unspecified mental condition. Brandt seeks injunctive and declaratory relief, and compensatory and punitive damages. *Id.* at 27.

## III.    Discussion

### A.    Screening Standard

District courts are required to review prisoners' civil complaints, *see* 28 U.S.C. § 1915A(a), and to dismiss any case that is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. *See* 28 U.S.C. §§ 1915A(b) & 1915(e)(2)(B). "The legal standard for dismissing a complaint for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) is the same as that for dismissing a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6)." *Schreane v. Seana*, 506 F. App'x 120, 122 (3d Cir. 2012) (citing *Allah v. Seiverling*, 229 F.3d 220, 223 (3d Cir. 2000)). That standard is set forth in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). To survive the court's screening for failure to state a claim, the complaint must allege "sufficient factual matter to show that the claim is facially

plausible." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (citation and internal quotation marks omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Fair Wind Sailing, Inc. v. Dempster*, 764 F.3d 303, 308 n.3 (3d Cir. 2014) (quoting *Iqbal*, 556 U.S. at 678). "[A] pleading that offers 'labels or conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). Pro se pleadings, as always, will be liberally construed. *See Haines v. Kerner*, 404 U.S. 519 (1972). Nevertheless, "pro se litigants still must allege sufficient facts in their complaints to support a claim." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013) (citation omitted).

### B.    Damages and Remedies

The Prison Litigation Reform Act of 1995, Pub. L. 104-134, §§ 801-810, 110 Stat. 1321-66 to 1321-77 (Apr. 26, 1996) (the "PLRA"), prohibits compensatory damages for "mental or emotional injury suffered while in custody" absent "a prior showing of physical injury." 42 U.S.C. § 1997e(e); *Allah v. Al–Hafeez,* 226 F.3d 247, 251 (3d Cir. 2000). More than a *de minimis* physical injury must be alleged. *See Mitchell v. Horn*, 318 F.3d 523, 536 (3d Cir. 2003). Here, Brandt seeks damage for "serious mental anguish, psychological and emotional distress, fear, anxiety, embarrassment, severe emotional trauma, and loss of enjoyment of life." DE 7 at 21. He does not, however, allege that he suffered a physical injury. Thus, as pled, the complaint does not support a claim for compensatory damages.

Further, given Brandt is no longer detained at ECCF, and thus no longer experiencing the conditions he describes in his complaint, injunctive and declaratory relief are also not available. *See Lanza v. Moclock*, 842 F. App'x 714, 716–17 (3d Cir. 2021) (§ 1983 claims for prospective

injunctive relief were moot where plaintiff was released from custody); *Sutton v. Rasheed*, 323 F.3d 236, 248 (3d Cir. 2003) ("An inmate's transfer from the facility complained of generally moots the equitable and declaratory claims.").[5]

In short, at least on the current version of the complaint, Brandt is statutorily barred from recovering compensatory damages, and this Court lacks subject matter jurisdiction over any claim for injunctive relief. I nonetheless discuss the potential claims below because § 1997e(e) does not foreclose the possibility of nominal and/or punitive damages, *see Mitchell*, 318 F.3d at 533.

### C.    Section 1983

A plaintiff may have a cause of action under 42 U.S.C. § 1983 for certain violations of constitutional rights. Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.

42 U.S.C. § 1983. Thus, to state a claim under § 1983, a plaintiff must allege, first, the violation of a right secured by the Constitution or laws of the United States, and second, that the alleged

---

[5] *See also, e.g.*, *Sides v. Pa. Dep't of Corr.*, No. 18-145, 2020 WL 1493549, at *14 (W.D. Pa. Mar. 27, 2020) ("an inmate lacks standing to seek [injunctive] relief regarding conditions in a particular prison or unit once he is transferred out of them unless the same conditions exist at the place to which he is transferred"); *Keffer v. Reese*, No. 17-00332-LPL, 2018 WL 928255, at *12 (W.D. Pa. Feb. 16, 2018) ("prisoner's claims for declaratory and injunctive relief become moot when the prisoner is released from the facility in which the alleged constitutional violation occurred").

deprivation was committed or caused by a person acting under color of state law. *See Harvey v. Plains Twp. Police Dep't*, 635 F.3d 606, 609 (3d Cir. 2011) (citations omitted).

A supervisor may not be held vicariously liable for the actions of his subordinates. *See, e.g., Chavarriaga v. N.J. Dep't of Corr.*, 806 F.3d 210, 222 (3d Cir. 2015). To adequately plead a plausible § 1983 claim against a supervisor, a plaintiff must plead facts which, if proven, would show that the supervisor had personal involvement in the alleged wrongs. *Rode v. Dellarciprete*, 845 F.2d 1195, 1207–08 (3d Cir. 1988). There are two theories of supervisory liability. Under the first, a plaintiff must plausibly allege that the supervisor enacted a policy, practice, or custom that was the "moving force" behind an alleged constitutional violation. *City of Canton v. Harris*, 489 U.S. 378, 389 (1989); *see also Los Angeles Cnty. v. Humphries*, 562 U.S. 29, 35–36 (2010). Under the second, a plaintiff must plausibly allege that the supervisor "participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in his subordinates' violations." *A.M. ex rel. J.M.K. v. Luzerne Cnty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004). Knowledge, for these purposes, means "contemporaneous knowledge of the offending incident or knowledge of a prior pattern of similar incidents." *C.H. ex rel. Z.H. v. Oliva*, 226 F.3d 198, 202 (3d Cir. 2000). "Allegations of participation or actual knowledge and acquiescence . . . must be made with appropriate particularity." *Rode*, 845 F.2d at 1207.

As to damages, even if Brandt demonstrates constitutional violations and personal involvement sufficient to support his § 1983 claims, to the extent he seeks money damages from the defendants in their official capacities, such relief is barred by the Eleventh Amendment. *See Kentucky v. Graham*, 473 U.S. 159 (1985); *Quern v. Jordan*, 440 U.S. 332, 342 (1979).

### D.      Due Process Claims

Brandt asserts substantive and procedural due process claims against the Administrative Defendants in their individual and official capacities for (1) failing to create and implement "standard operating policies and procedures, and allowing a custom and pattern not to properly classify [Brandt]" (Count I); (2) failing to consider less restrictive conditions of confinement (Count V); (3) failing to "train, monitor, and supervise Biovana and Crawford" (Count I); and (4) failing to "properly classify inmates for mental health problems and for a propensity of violence," thereby causing "wide-spread violence in the facility," which led to Brandt suffering from "excessive isolation" and psychological harm (Count IV). DE 7 at 9–10, 23–27. Brandt also asserts due process claims against Biovana and Crawford for "failing to exercise administrative discretion when making the decision to place him on max custody" (Count II). *Id.* at 24–25.

Construing the complaint liberally as I must, Brandt appears to allege that he was subjected to (1) unconstitutional conditions of confinement resulting from his security classification of "max custody status" and placement "in general population on the max unit," and (2) deliberate indifference to an unspecified serious medical need arising out of his "excessive isolation." Brandt seeks to hold the Administrative Defendants liable for these alleged constitutional violations both as policymakers for failing to enact security classification policies and for failing to train Biovana and Crawford to properly classify detainees. Finally, Brandt seeks to hold Biovana and Crawford individually liable for failing to properly classify him.

#### 1.      Security Classification

A pretrial detainee "may not be punished prior to an adjudication of guilt in accordance with due process of law." *Bell v. Wolfish*, 441 U.S. 520, 535 (1979). Rather, he may only be detained "to ensure his presence at trial," and he "may [be] subject[ed] to the restrictions and

conditions of the detention facility so long as those conditions and restrictions do not amount to punishment*." Id*. at 536–37.  "If a particular condition or restriction of pretrial detention is reasonably related to a legitimate governmental objective . . . it does not, without more, amount to punishment." *Southerland v. Cnty. of Hudson*, 523 F. App'x 919, 921–22 (3d Cir. 2013).

Institutional security and effective facility management are valid governmental objectives that can justify restrictions on pretrial detainees. *See Bell*, 441 U.S. at 540. Such measures are "peculiarly within the province and professional expertise of corrections officials, and, in the absence of substantial evidence . . . to indicate that the officials have exaggerated their response to these considerations, courts should ordinarily defer to their expert judgment in such matters." *Bell*, 441 U.S. at 540 n.23; *see also Sandin v. Conner*, 515 U.S. 472, 482–83 (1995) ("[F]ederal courts ought to afford appropriate deference and flexibility to state officials trying to manage a volatile environment.").

Further, "the Due Process Clause does not mandate that . . . officials use the *least* restrictive means available to accomplish their non-punitive objective."  *Steele v. Cicchi*, 855 F.3d 494, 506 (3d Cir. 2017) (citing *Bell*, 441 U.S. at 542 n.25; emphasis in original). "Indeed . . . '[g]overnmental action does not have to be the only alternative or even the best alternative for it to be reasonable, to say nothing of constitutional.'" *Steele*, 855 F.3d 494, 506 (quoting *Bell*, 441 U.S. at 542 n.25). "The central question," therefore, is whether Brandt has "sufficiently alleged that the conditions of his pretrial confinement constituted 'punishment.'" *Southerland*, 523 F. App'x at 921–22. He has not.

Brandt alleges that the defendants failed to properly classify him, which resulted in his placement in "general population max status" for a period of less than nine months, while a low or medium classification would have resulted in placement he preferred, in Delaney Hall. But

Brandt does not have a protected liberty interest in his security classification or housing

preference. *See*, *e.g.*, *Stevenson v. Carroll*, 495 F.3d 62, 69 (3d Cir. 2007) ("pretrial detainees do

not have a liberty interest in being confined in the general population"); *Muslim v. Frame*, 854 F.

Supp. 1215, 1227 (E.D. Pa. 1994) ("The United States Constitution does not give the [pretrial

detainee] plaintiff a liberty interest in remaining in the general prison population."); *Niblack v.*

*Albino*, No. 09-428, 2009 WL 2496876, at *6 (D.N.J. Aug. 10, 2009) ("neither New Jersey law

nor New Jersey Department of Correction regulations create a liberty interest in a prisoner's

classification within an institution").

Moreover, Brandt has not plausibly alleged that his classification and general population

placement amounted to punishment; he rather alleges that his classification was due to his

criminal history.[6] *See* DE 7 at 8 (alleging Administrative Defendants denied him access to

---

[6] Brandt is a frequent litigant in this district, and his history of violent behavior, psychological illness, and multiple escapes from detention is a matter of public record. *See*, *e.g.*, *Brandt v. Monte*, 626 F. Supp. 2d 469, 472 (D.N.J. 2009) ("Plaintiff has had a long history of psychological illness, which, at times, has manifested itself in violent and unlawful behavior. In 2003, Plaintiff was found NGRI for criminal charges of burglary, criminal mischief, and criminal trespass as a result of breaking in to his exgirlfriend's college dormitory room and, in the midst of a dispute with her, destroying her property."); *Brandt v. Hogan*, No. 10-4944, 2013 WL 1702181, at *1 (D.N.J. Apr. 18, 2013) ("In 2001, Plaintiff was charged . . . with burglary, criminal mischief, and criminal trespass. He was subsequently diagnosed with bipolar disorder, manic type with psychotic features, and with an antisocial personality disorder."); *In re Commitment of J.B.*, No. A-1786-07T4, 2009 WL 1658494, at *1 (N.J. Super. Ct. App. Div. June 16, 2009) ("The charges arose out of [Brandt's] entry into the college dormitory room of his girlfriend and her roommate without their permission. In their presence, he knocked over a bed and threw a television and stereo out of the window. Police officers who later apprehended [Brandt] saw that he had cut his wrists in an apparent suicide attempt."); *id.* at *2 ("The State's expert and [Brandt's treating psychiatrist], Mahmood Ghahramani, M.D., testified that [Brandt] has a long history of violent and assaultive behavior and non-compliance with medication. He is also an escape risk. The doctor noted that [Brandt] had been admitted to Ancora Psychiatric Hospital, but was transferred to the Ann Klein Forensic Center . . . after assaulting his then treating psychiatrist."); *Brandt v. Monroe*, No. 05-3386, 2006 WL 2023190, at *1 (D.N.J. July 14, 2006) ("On March 24, 2005, Plaintiff got into an altercation with a staff member at Greystone, and was transferred to Ann Klein Psychiatric Hospital the following day."); *Brandt v. Burns*, 441 F. App'x 924, 925 n.2 (3d Cir. 2011) ("Brandt had previously escaped from Greystone Psychiatric Hospital on two separate occasions."); *Brandt v. Feibusch*, No. 10-4223, 2011 WL 1256631, at *2 (D.N.J. Mar. 29, 2011) ("[Brandt] alleges that, on March 2, 2010, the day of his transfer to the ITU, he broke several day room windows out with a chair. [Brandt] alleges that he was thereafter forcibly injected by the nursing supervisor with antipsychotic medication, not for medical reasons, but for the convenience of the staff. . . . [Brandt] alleges that when he approached a staff member the next day, for hygiene products, the

"accommodations at Delaney Hall . . . because of his criminal background"), 11 (alleging his transfer request was denied because he "was not eligible due to his . . . criminal history"), 12 ("[b]ased on his criminal background . . . plaintiff was placed on max custody status"), 16 ("The administrative defendants should not have generalized and individualized in all factual situations; such as to only rely on plaintiff's criminal background without any subjective inquiry."), 18 ("The defendants are aware of th[e] fact [of his NGRI] and have knowledge of it, because it is his criminal background that they keep saying makes him ineligible" for transfer to Delaney Hall), 25 (defendants "discriminated against plaintiff[] because of his criminal record included NGRI records, plaintiff's previous (NGRI) *Krol*[7] status, which they reviewed and decided not to transfer him to Delaney Hall and or change his custody status").

"[T]he ultimate question under *Bell* is whether a particular condition or restriction of pretrial detention is reasonably related to a legitimate governmental objective." *Hubbard v. Taylor*, 538 F.3d 229, 236 (3d Cir. 2008) (quotations omitted). A detainee's security classification and resulting housing placement is related to the valid government objective of maintaining institutional security, and a detainee's criminal history is relevant to his or her security classification. Brandt's own allegations are internally inconsistent; he claims, on the one

---

staff member said there were none and then said, 'You should break some more windows.' [Brandt] alleges that he then broke some more windows".); *Brandt v. Feibusch*, No. 10-4223, 2012 WL 1937563, at *1 (D.N.J. May 29, 2012) (detailing criminal charges and diagnosis); *Brandt v. Acuff*, No. 11-3557, 2012 WL 665625, at *1 (D.N.J. Feb. 29, 2012) (same); *Brandt v. Rossi*, No. 11-2627, 2012 WL 359736, at *1 (D.N.J. Feb. 2, 2012) (same); *Brandt v. Trenton Psychiatric Hosp.*, No. 09-5367 FLW, 2010 WL 5392727, at *1 (D.N.J. Dec. 22, 2010) (same); *Brandt v. McQuaide*, No. 10-1035, 2010 WL 5343233, at *1 (D.N.J. Dec. 20, 2010) (same); *Brandt v. Davy*, No. 05-2265, 2006 WL 517685, at *1 (D.N.J. Mar. 2, 2006) (same).

[7] "Under New Jersey law, an acquittal by reason of insanity terminates the criminal proceedings against an accused, unless the accused remains mentally ill and in need of involuntary commitment, in which case the individual can be involuntary committed. After a defendant is committed, periodic review hearings (*Krol* hearings) are held in a criminal proceeding on notice to the prosecutor to determine if continued involuntary commitment is warranted." *Brandt v. Burns*, 441 F. App'x at 925 (cleaned up).

hand, that the defendants fail to screen detainees for "mental health problems" or "propensity for violence," but on the other hand that he himself was classified in max status due to, among other things, his history of mental health problems and violent offenses.

In short, Brandt has not plausibly alleged his security classification and resulting housing assignment were arbitrary or purposeless restrictions on his liberty, or so excessive as to result in unconstitutional punishment. *See Drew v. City of New York*, No. 18-10719, 2022 WL 19705, at *6 (S.D.N.Y. Jan. 3, 2022) ("Plaintiff alleges that his security classification was based on 'inaccurate' 'high charge[s]' as part of a 'classification policy' that caused him 'undue burden, and punishment.' However, Plaintiff fails to put forth any allegations that Defendants operated with an expressed intent to punish when they determined his classification level or housed him in 'cell-status' housing.") (internal citation and quotations omitted); *Adams v. Galletta*, No. 96-3750, 1999 WL 959368, at *4 (S.D.N.Y. Oct.19, 1999) (security classification did not implicate liberty interest because it was non-punitive and based on inmate's past "assaultive behavior" and "history of escape" ); *McFadden v. Solfaro*, Nos. 95-1148, 95-3790, 1998 WL 199923, at *8 (S.D.N.Y. April 23, 1998) (assignment of pretrial detainee to segregated housing based on his security classification did not violate Due Process Clause); *Covino v. Vt. Dep't of Corr.*, 933 F.2d 128, 129 (2d Cir. 1991) (pretrial detainee did not have a constitutional right to remain in general population where removal was for non-punitive reasons). Accordingly, Brandt has failed to adequately plead a constitutional violation arising from his security classification. And since Brandt has not plausibly alleged a constitutional violation related to his security classification, I

14

need not address his allegations regarding classification policies, training, and the alleged failure to classify ECCF detainees.[8]

Even assuming, however, that Brandt had plausibly alleged a constitutional violation resulting from his security classification, he has not plausibly alleged the Administrative Defendants' personal involvement. His allegations paraphrase relevant standards, lack specificity, and group the Administrative Defendants together without distinction among them.[9] *See Iqbal*, 566 U.S. at 678 (complaint does not suffice if it "offers [merely] 'labels and conclusions'" or "'naked assertion[s]' devoid of 'further factual enhancement'") (quoting *Twombly*, 550 U.S. at 555, 557); *Sherrill v. City of Hoboken*, No. 16-3092, 2020 WL 64617, at

---

[8] *See, e.g.*, *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005) ("We need reach the question of what process is due only if the inmates establish a constitutionally protected liberty interest, so it is appropriate to address this threshold question at the outset.").

[9] *See, e.g.*, DE 7 at 7 ("plaintiff claims as a result of the administrative defendants' actions and failures of policies, practices and or custom and pattern, adopted by ECCF is the cause and are responsible for plaintiff's constitutional violations"), 10 ("The ECCF has no legitimate classification operation or process, and are hiding behind secrecy and security reasons that don't exist, or when they do it's as a result of their failure to properly manage"), 12–13 ("The administrative defendants . . . [have] an obligation to create, implement, train, and oversee that there is a classification policy and procedures at ECCF that are adequate and in accordance with law. The defendants have failed to do that which is required of them . . . .") 13 ("No one is aware of a classification committee or staff members at ECCF that classify inmates."), 14 ("The administrative defendants at ECCF have not established an appropriate or adequate classification [committee] . . . ." "The administrative defendants have an obligation to exercise administrative discretion when restricting the freedom and restraints of a pretrial detainees and have failed to do so when placing plaintiff on max custody status indefinitely by such custom, practice, or pattern at the ECCF."), 15 (the administrative defendants have failed to "establish written policies and procedures for classifying inmates"), 16 ("The actions and inaction of the administrative defendants are substantially burdening a fundamental right that lacks a compelling governmental interest. Plaintiff's custody status as a pretrial detainee is arbitrary and capricious . . . ." "The administrative defendants failed to consider favorable information and dealt with plaintiff in a perfunctory fashion."), 17 ("As a result of an administrative custom, practice, and pattern the administrative defendants[] . . . are responsible for creating, implementing, and overseeing; have failed to provide plaintiff with any process to address his placement on max custody status and subjective reasonable justification for his denial to be transferred to programs, services, and to the least restrictive conditions necessary for the purpose of detention and confinement."), 22 ("The administrative defendants . . . are charged with failing to train, monitor, and supervise defendant officer Bivona and Lt. Crawford at ECCF and allowing them unbridles and unchecked discretion without any structure.").

*4 (D.N.J. Jan. 6, 2020) ("[U]nadorned legal conclusions and threadbare recitals of the relevant statutory language fail to meet the pleading requirements of Rule 8.").

Further, to the extent Brandt asserts that his grievances support a plausible inference of personal involvement, *see* DE 7 at 13 ("The defendants have . . . actual knowledge and personal involvement of said failures, not just by their required oversight, but plaintiff's numerous requests and grievances to the administrative defendants."), he is mistaken. "A defendant's review and denial of a prisoner's grievance is not sufficient to establish the defendant's personal involvement in an underlying violation of the prisoner's constitutional rights." *See Dooley v. Wetzel*, 957 F.3d 366, 374 (3d Cir. 2020).

Likewise, Brandt has not plausibly alleged that Biovana and Crawford failed to exercise administrative discretion when classifying him as "max custody" and "denying his request to go to Delaney Hall." DE 7 at 24. As with the Administrative Defendants, his allegations against these defendants are conclusory and lack factual support. *See*, *e.g.*, DE 7 at 22 ("The defendant officer Bivona and Lt. Crawford have usurped power and hide behind secrecy reasons when none exist; in unbecoming a public employees and dictatorship that is deliberate indifferent to plaintiff's right under the U.S. Constitution."). He generally asserts that the Biovana and Crawford "are responsible for conducting the classification of inmate[s] at the ECCF and have failed to exercise administrative discretion when placing and keeping plaintiff on Max custody status," *id.* at 22, but he offers no more than a conclusory and self-serving assertion that this was the case.

Accordingly, as Brandt has failed to plausibly allege a constitutional violation on the grounds that his security classification and resulting placement in "general population on the

max unit" amounted to punishment, his due process claims on these grounds (Counts I, II, and V) are dismissed.

### 2.    Excessive Isolation and Denial of Access to Recreation

The Due Process Clause affords protections to pretrial detainees "at least as great as the Eighth Amendment protections available to a convicted prisoner," *City of Revere v. Mass. Gen. Hosp.*, 463 U.S. 239, 244 (1983); *see also Natale v. Camden Cty. Corr. Facility*, 318 F.3d 575, 581 (3d Cir. 2003), and, as stated above, is violated when a pretrial detainee is subjected to punishment that is not reasonably related to a legitimate governmental objective. *See Hubbard v. Taylor*, 538 F.3d 229, 236 (3d Cir. 2008). The Eighth Amendment requires prison officials to provide humane conditions of confinement. *See Betts v. New Castle Youth Dev. Ctr.*, 621 F.3d 249, 256 (3d Cir. 2010); *see also Farmer v. Brennan*, 511 U.S. 825, 832 (1994). "For the conditions of confinement to rise to the level of an Eighth Amendment violation, they must deny the 'minimal civilized measure of life's necessities.'" *Betts*, 621 F.3d at 256 (quoting *Farmer*, 511 U.S. at 835). Thus, "prison officials violate an inmate's Eighth Amendment rights when they deprive her of a single identifiable human need such as food, warmth, or exercise." *Chavarriaga v. New Jersey Dep't of Corr.*, 806 F.3d 210, 226 (3d Cir. 2015); *see also Betts*, 621 F.3d at 256 (inmates must receive "adequate food, clothing, shelter, and medical care," and prison officials must "take reasonable measures to guarantee the safety of inmates"). A "failure to provide minimally civil conditions of confinement to pre-trial detainees violates their rights against punishment without due process of law." *Roman v. DeMarco*, No. 18-8010, 2019 WL 452736, at *2 (D.N.J. Feb. 5, 2019) (citing *Reynolds v. Wagner*, 128 F.3d 166, 173–74 (3d Cir. 1997)).

"Unconstitutional punishment typically includes both objective and subjective components." *Stevenson v. Carroll*, 495 F.3d 62, 68 (3d Cir. 2007). "[T]he objective component

requires an inquiry into whether the deprivation was sufficiently serious and the subjective component asks whether the officials acted with a sufficiently culpable state of mind." *Id.* (cleaned up). To meet the objective component, the conditions must "cause inmates to endure such genuine privations and hardship over an extended period of time, that the adverse conditions become excessive in relation to the purposes assigned to them." *Hubbard*, 538 F.3d at 233 (cleaned up). To meet the subjective component, a detainee must assert that prison officials acted with deliberate indifference, meaning that they consciously disregarded a serious risk to the detainee's health or safety. *See Wilson v. Seiter*, 501 U.S. 295, 298–99 (1991).

Brandt alleges that his confinement in "general population on the max unit" was unconstitutional because he was excessively locked down and isolated for weeks at a time due to the defendants' alleged failure to classify inmates and the resulting "wide-spread violence at ECCF." DE 7 at 19–20. Brandt contends that he was "locked in a jail cell at a minimum of 23 hours a day on average" and "as the result of too many inmates," he had access to the recreation area "maybe every other day for about 30 minutes." *Id.* at 19–20. Brandt also alleges that "being diagnosed with a mental health condition, a serious medical need," he "should not have been placed on lockdown for prolong[ed] periods with no mental health treatment." *Id.* at 20.

Brandt does not provide additional details regarding the alleged excessive isolation. He does not state whether he had a cellmate or cellmates for any of the lockdown periods. He does not specify, beyond "weeks at a time," the amount of time that he spent on lockdown status during his collective 9 months of detention. It is unclear whether he was locked down sporadically, or for the majority of that time. Likewise, it is unclear whether Brandt's limited access to the recreation area was during periods of lockdown or for the duration of his detention. Brandt also does not specify the circumstances surrounding the lockdowns beyond the

conclusory statement that he "was excessively placed on isolation . . . because of the widespread violence at the facility." *Id.* Finally, Brandt does not specify his mental health condition, or otherwise provide additional information about it.[10] In short, Brandt has not plausibly alleged a conditions-of-confinement claim.

A short period of lockdown with resulting isolation, without more, is not a serious deprivation. *Clark v. Coupe*, 55 F.4th 167, 183 (3d Cir. 2022) ("Despite the threat of harm posed by isolation, we recognize that solitary confinement does not *per se* violate the Constitution as long as the conditions of confinement are not foul, inhuman or totally without penological justification.") (quotations and citation omitted); *Miller v. Metzger*, No. 21-2223, 2022 WL 4820322, at *2 (3d Cir. Oct. 3, 2022) ("To the extent that Miller's claim arose out of his relatively short-term confinement in isolation and subsequent [one-year] placement in the [Security Housing Unit], such confinement does not, standing alone, constitute cruel and unusual punishment."); *Liles v. Camden Cty. Dep't of Corr.*, 225 F. Supp. 2d 450, 461 (D.N.J. 2002) ("Lockdown periods of less than thirty days . . . generally do not violate the Eighth Amendment."); *see also id.* (granting summary judgment in favor of prison officials where prisoners' allegations regarding a 22-day lockdown did not establish that the lockdown "caused them anything more than inconvenience and discomfort") (citing *Harris v. Fleming*, 839 F.2d

---

[10] In support of his allegation that he suffered "severe emotional trauma . . . fostered by his denial of treatment and extreme isolation," Brandt cites a complaint he filed in another action, *Brandt v. Morgan*, No. 22-3379 (D.N.J.). DE 7 at 21. In that complaint, which appears to cover some of the same period of detention at ECCF (beginning on February 25, 2022) as this complaint (and which this Court will screen in due time), Brandt states that he was "evaluated by physician Jane Doe and diagnosed with substance abuse disorder and prescribed suboxone." No. 22-3379, DE 1 at 11. Brand also asserts that when he was "assessed and screened by defendant Jane Doe, he had informed her that he had an extensive psychiatric history." *Id.* at 12. To the extent Brandt intends for the Court to refer to that complaint to glean relevant information, the Court declines to do so. Brandt must plead all allegations related to his claims in this matter in the operative complaint.

1232, 1236 (7th Cir. 1988) (28 days in segregation)); *Caldwell v. Miller*, 790 F.2d 589, 601 (7th Cir. 1986) (30 days of 24-hour lockdown)).

To the extent Brandt alleges that the deprivation was sufficiently serious—amounting to an inhumane condition—because he was suffering from a mental condition while isolated, he has not provided a sufficient factual basis. He does not provide detail about his condition during the relevant time, including a diagnosis, symptoms, treatment, medication, or the impact of the lockdown periods on his mental health. Thus, he has not adequately alleged the objective component of his conditions of confinement claim.

Brandt also has not sufficiently alleged the subjective component—that prison officials acted with deliberate indifference to his health or safety. To the contrary, his allegations imply that security—a legitimate governmental objective—was the reason for the lockdowns. *See* DE 20 (alleging "wide-spread violence at ECCF" and stating that "ECCF has [had] numerous homicides within the past year"); *see also Saunders v. Hill*, No. 19-4395, 2019 WL 5558961, at *3 (E.D. Pa. Oct. 24, 2019) (A "lock-down for the purpose of ensuring the security and integrity of the prison facility falls within the expected perimeters of the sentence imposed on the prisoner, and therefore does not amount to a constitutional violation under either the Eighth or the Fourteenth Amendment.") (citations omitted; cleaned up); *see also Litchfield v. Lehigh Cnty. Prison*, No. 21-5068, 2022 WL 493184, at *3 (E.D. Pa. Feb. 17, 2022) ("Mr. Litchfield has not pled facts to satisfy the objective or subjective prong. Objectively, he has not alleged any detail about the scope of the lockdown measures, such as what was allowed or how long they lasted. He also has not alleged the reasons for the lockdowns. Without such an allegation, the Court cannot determine whether his allegations establish that either Warden Russel or Director Donate acted with an express intent to punish.") (citation omitted).

Brandt also fails to plead personal involvement on the part of the Administrative

Defendants; he does not, for example, allege that the Administrative Defendants knew of his

mental illness and thus acted with a culpable state of mind in isolating him. *Webb v. May*, No.

CV 20-938-RGA, 2021 WL 75738, at *4 (D. Del. Jan. 8, 2021) ("White describes several

conditions in which he was held while in the SHU. But those conditions are not meaningfully

attributed to any of the individual Defendants, and in the absence of allegations of the

Defendants' personal involvement they are not liable for any constitutional violations resulting

from those conditions. Although White alleges that the Warden generally knew about the

allegedly unconstitutional conditions, his allegations against her are too generalized and

conclusory to state a claim.").[11]

Accordingly, as Brandt has failed to plausibly allege a constitutional violation on the

grounds that he was subjected to unconstitutional conditions of confinement, his due process

claim on this ground (Count IV) is dismissed.

---

[11] To the extent Brandt intended to assert a claim based on limited access to recreational facilities, without providing additional details or specifying the extent of the deprivation, he fails to plausibly allege unconstitutional conditions of confinement. *See Barndt v. Wenerowicz*, 698 F. App'x 673, 677 (3d Cir. 2017) (denial of outdoor recreation and shower for 28 days not a constitutional violation); *Little v. Mun. Corp.*, 51 F. Supp. 3d 473, 489 (S.D.N.Y. 2014) ("[T]o the extent that Plaintiffs' complaint regarding a lack of air refers to lack of out-of-cell recreation, Plaintiffs fail to allege that they were denied opportunity to exercise such as to provide grounds for an Eighth Amendment claim. Moreover, 'there is no constitutional right to outdoor recreation.'") (quoting *Shakur,* 2009 WL 2151174, at *4; citations omitted); *Shakur v. Sieminski,* No. 07–CV–1239, 2009 WL 2151174, at *4 (D. Conn. July 15, 2009) ("While courts have found that denial of all opportunity to exercise violates an inmate's constitutional rights, they have found no violation where the inmate has an opportunity for exercise, either in or outside of his cell.") (citing *Williams v. Greifinger*, 97 F.3d 699, 703–05 (2d Cir. 1996)). Brand also fails to sufficiently plead that the Administrative Defendants acted with a sufficiently culpable state of mind. To the contrary, Brand specifically alleges that his limited time in the recreation area was due to overcrowding. As "[p]rison officials have a legitimate interest in managing an overcrowded prison," the limited access is reasonably related to a legitimate governmental objective. *Hubbard*, 538 F.3d at 233 (citing *Union County Jail Inmates v. DiBuono*, 713 F.2d 984, 993 (3d Cir. 1983)).

### 3.      Deliberate Indifference to Serious Medical Need

The Due Process Clause applies to pretrial detainees' claims of inadequate medical care. *Bocchino v. City of Atlantic City*, 179 F. Supp. 3d 387, 403 (D.N.J. 2016). In this context as well, the Fourteenth Amendment incorporates the protections of the Eighth Amendment's "deliberate indifference" standard. *Holder v. Merline*, No. 05-1024, 2005 WL 1522130, at *3 (D.N.J. June 27, 2005). Most cases have stated that, at a minimum, the Eighth Amendment's "deliberate indifference" standard will suffice. In other words, government behavior must be so egregious and outrageous that it "shocks the conscience." *A.M. ex rel. J.M.K. v. Luzerne Cnty. Juvenile Detention Ctr.*, 372 F.3d 572, 579 (3d Cir. 2004) (citation omitted).

 In the context of a claim alleging a violation of the right to adequate medical care, a pretrial detainee must allege: (1) a serious medical need; and (2) behavior on the part of prison officials constituting deliberate indifference to that need. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 582 (3d Cir. 2003).

As to the first prong, a serious medical need is: (1) "one that has been diagnosed by a physician as requiring treatment"; (2) "one that is so obvious that a lay person would recognize the necessity for a doctor's attention"; or (3) one for which "the denial of treatment would result in the unnecessary and wanton infliction of pain" or "a life-long handicap or permanent loss." *Atkinson v. Taylor*, 316 F.3d 257, 272–73 (3d Cir. 2003) (internal quotations and citations omitted). Other relevant factors include "the severity of the medical problems, the potential for harm if the medical care is denied or delayed and whether any such harm actually resulted from the lack of medical attention." *Maldonado v. Terhune*, 28 F. Supp. 2d 284, 289 (D.N.J. 1998).

The second element of the *Estelle* test is subjective and "requires an inmate to show that prison officials acted with deliberate indifference to his serious medical need," i.e., that prison

officials knew of, and disregarded, an excessive risk to an inmate's health or safety. *Holder*, 2005 WL 1522130, at *4 (citing *Natale*, 318 F.3d at 582). Mere negligence is insufficient; rather, deliberate indifference requires a "reckless disregard of a known risk of harm." *Holder*, 2005 WL 1522130, at *4 (citing *Farmer v. Brennan*, 511 U.S. 825, 836 (1994)). Courts have found deliberate indifference "in situations where there was objective evidence that a plaintiff had serious need for medical care, and prison officials ignored that evidence, and in situations where necessary medical treatment is delayed for non-medical reasons." *Natale*, 318 F.3d at 582.

Brandt asserts that he has been "diagnosed with a mental health condition," and he "should not have been placed on lock down for prolonged periods with no mental health treatment . . . as it fosters mental health problems and violence." DE 7 at 20. He alleges that he suffered psychological injury due to this "denial of treatment and extreme isolation." *Id.* at 21. These allegations are insufficient to plausibly allege a serious medical need or behavior on the part of prison officials that constitutes deliberate indifference to that need.

First, as noted above, Brandt has not provided any details about his diagnosed condition. He does not state the name of his condition; when or by whom he was diagnosed; his symptoms; the treatment he sought or felt he needed; or the manner in which he requested such treatment, including to whom (if anyone) he communicated about his request or condition, and the response (if any) he received. The complaint fails to allege Brandt had a serious medical need. *See Greenfield v. Corzine*, No. 09-4983, 2012 WL 1134917, at *21 (D.N.J. Apr. 4, 2012) ("other than vague allegations that he has increased anxiety and 'intense feelings of fear,' Plaintiff has not alleged any facts showing that he has any serious medical need for which he requires medical care").

Second, even if he had adequately alleged a serious medical need, Brandt failed to plausibly allege the personal involvement of the Administrative Defendants. His allegation of "a denial of treatment" (DE 7 at 21), without more, cannot support a claim that the Administrative Defendants, none of whom is alleged to have been directly involved in his medical care, knew of and disregarded an excessive risk to his health. *See Gillette v. Prosper*, 852 F. App'x 642, 645 (3d Cir. 2021) ("The amended complaint contains only general and conclusory statements that Prosper and Wilson were aware of, but were deliberately indifferent to Gillette's needs and risks of harm. As the District Court stated, there are no allegations of specific conduct, knowledge of Gillette's individual circumstances, or other personal involvement in an unlawful deprivation of his rights."); *Greenfield*, 2012 WL 1134917, at *22 ("Plaintiff also does not satisfy the second prong of the deliberate indifference test because he does not allege how Defendants Main or Friedman acted with reckless disregard of a known risk of harm to Plaintiff—since Plaintiff has failed to articulate the scope and/or severity of the alleged medical need. Indeed, he only makes general allegations that do not particularly state how each of these individual Defendants acted with deliberate indifference to a known medical need of Plaintiff."); *Brittingham v. Nunn*, No. 20-014, 2020 WL 2404776, at *5 (D. Del. May 12, 2020) ("Deliberate indifference may lie upon a claim of inadequate medical treatment, and it may also be based upon a claim of delay or complete denial of medical care. Plaintiff attempts to raise both claims but does so in a conclusory manner, without factual support and without identifying any particular individual who may have allegedly violated his constitutional rights."); *Jacobs v. Dist. Attorney's Off.*, No. 10-2622, 2018 WL 1378629, at *15 (M.D. Pa. Mar. 19, 2018) ("Plaintiff's allegation that Defendants Johnson and Beard approved his placement on the RRL with deliberate indifference to the substantial risk of Plaintiff's mental illness is wholly conclusory and without an iota of

support. . . . Plaintiff does not present any facts that, accepted as true, demonstrate a plausible right to relief."); *see also Webb v. May*, No. CV 20-938-RGA, 2021 WL 75738, at *4 (D. Del. Jan. 8, 2021) ("To the extent Plaintiff alleges deliberate indifference to serious medical and mental health needs and that medical defendants failed to properly train staff, the conclusory allegations are not supported by any facts and fail to state claims of constitutional violations.").

Accordingly, as Brandt has failed to plausibly allege a constitutional violation on the grounds that the Administrative Defendants were deliberately indifferent to his serious medical needs, his due process claim on this ground (Count IV) is dismissed.

### E.    Equal Protection

Brandt alleges that Bivona and Crawford "deprived plaintiff of the equal protection of the law, by not affording him the rights as those similarly situated and similar backgrounds, in violation of the Equal Protection Clause." DE 7 at 24. He alleges that "similarly situated inmates" enjoyed "better conditions in a lesser restrictive setting" at Delaney Hall, *id.* at 7, and that "[t]he only difference between [his] criminal background and the inmates at . . . Delaney Hall is his previous NGRI status." *Id.* at 8. Brandt further alleges that "they allow similarly situated inmates with significantly more severe crimes and criminal backgrounds than plaintiff's to be placed on minimum custody and authorize the transfer to Delaney Hall. In some cases they have authorized for inmates on max custody status to be transferred as the security level is similar or greater than that at the main building at ECCF." *Id.* at 18.

The Equal Protection Clause requires state actors to treat "similarly situated" persons alike. *See City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). Traditionally, to establish a *prima facie* case, a plaintiff needs to prove that he is a member of a protected class and that he received different treatment than similarly-situated individuals. *See Oliveira v. Twp.*

25

*of Irvington*, 41 F. App'x 555, 559 (3d Cir. 2002). The mentally ill are not a recognized protected

class for equal protection purposes. *See Cospito v. Heckler*, 742 F.2d 72, 83 (3d Cir. 1984)

("[M]ental illness has not been recognized as a suspect class . . . under the equal protection

clause."); *Disability Rights N.J., Inc. v. Velez*, 2011 WL 2976849, at *15 (D.N.J. Jul. 20, 2011)

("[I]ndividuals with mental illness have never been held a 'suspect class.'"). "Persons are

'similarly situated' for purposes of an equal protection claim when 'they are alike in all relevant

aspects.'" *Startzell v. City of Philadelphia*, 533 F.3d 183, 203 (3d Cir. 2008) (emphasis omitted).

Where, as here, a plaintiff alleges that he alone "has been intentionally treated differently

from others similarly situated and that there is no rational basis for the difference," he may raise

a "class of one" equal protection claim. *See Engquist v. Or. Dep't of Agric.*, 553 U.S. 591, 598

(2008). To maintain such a claim, a plaintiff must establish that he has been intentionally and

irrationally singled out. *See id.*; *see also Mosca v. Cole*, 217 F. App'x 158, 164 (3d Cir.

2007) ("[A]t the very least, to state a claim under [a class of one theory], a plaintiff must allege

that (1) the defendant treated him differently from others similarly situated, (2) the defendant did

so intentionally, and (3) there was no rational basis for the difference in treatment."). When

alleging the existence of similarly situated individuals, a plaintiff "cannot use . . . 'conclusory,

boilerplate language' to show that he may be entitled to relief," and "bald assertion[s] that

other[s] . . . were treated in a dissimilar manner" will not suffice. *See Young v. New Sewickley

Twp.*, 160 F. App'x 263, 266 (3d Cir. 2005) (citing *Evancho v. Fisher*, 423 F.3d 347, 353 (3d

Cir. 2005)).

Here, Brandt has not pled facts suggesting that Bivona or Crawford intentionally and

irrationally treated him differently from similarly situated inmates, nor has he plausibly alleged

that he is similarly situated to other individuals residing at Delaney Hall. His allegations,

including that "[t]he only difference between [his] criminal background and the inmates at . . .

Delaney Hall is his previous NGRI status" (DE 7 at 8), are "bald assertions" that unspecified

others were treated dissimilarly, and it is doubtful that Brandt, in the context of a claim related to

his security classification, could ever plausibly allege that he and other pretrial detainees are

truly similarly situated. As another court in this district explained:

> In the context of discretionary . . . security classifications, . . . courts in the Third
> Circuit have questioned whether "prisoners can be found to be similarly situated
> to one another for equal protection purposes, under any circumstances." *Faruq v.
> McCollum*, No. 11-5987, 2013 WL 3283942, at *6 (D.N.J. June 25, 2013); *see
> also Johnson v. Paparozzi*, 219 F. Supp. 2d 635, 644 (D.N.J. 2002); *Rowe v.
> Cuyler*, 534 F. Supp. 297, 301 (E.D. Pa.), *aff'd*, 696 F.2d 985 (3d Cir. 1982)
> (Table). That is because "no two prisoners, being different human beings, will
> possess identical backgrounds and characters." *Rowe*, 534 F. Supp. at 301.
> Therefore, "it is difficult to believe that any two prisoners could ever be
> considered 'similarly situated' for the purpose of judicial review on equal
> protection grounds of broadly discretionary decisions because such decisions may
> legitimately be informed by a broad variety of an individual's characteristics." *Id.*

*Mikhaeil v. N.J. Admin. Off. of the Cts.*, No. 18-8313, 2020 WL 4501922, at *3 (D.N.J. Aug. 5,

2020); *see also id.* ("[T]he decision to place a prisoner in a pre-release program . . . 'is inherently

a subjective determination not susceptible of mathematically precise analysis. The grounds

articulated for denial may only be highlights of a catalogue of valid objections, any one of which

might support the decision.'") (quoting *Rowe*, 534 F. Supp. at 301); *Faruq v. McCollum*, No. 11-

5987, 2013 WL 3283942, at *5 (D.N.J. June 25, 2013) ("with regard to security level and

placement decisions that are based on individual factors and histories, it is hard to imagine that

any inmate would be considered similarly situated"; such decisions "may legitimately be

informed by a variety of an individual's characteristics that would warrant different treatment

for inmates based on valid penological concerns) (quotations omitted); *see also id.* at *6 ("with

regard to discretionary decisions such as parole, security classification and placement, courts in

the Third Circuit have found it improbable that prisoners can be found to be similarly situated to one another for equal protection purposes, under any circumstances").

In short, Brandt has not plausibly alleged that Bivona and Crawford intentionally discriminated against him or that he was similarly situated to other inmates who allegedly received more favorable treatment. His equal protection claim (Count II) must be dismissed.

### F.   ADA and Rehabilitation Act Claims

Brandt attempts to assert a claim under the ADA and Rehabilitation Act against all defendants. He alleges:

> The administrative defendants and officer Bivona and Lt. Crawford discriminated against plaintiff; because of his criminal record included NGRI records, plaintiff's previous (NGRI) *Krol* status, which they reviewed and decided not to transfer him to Delaney Hall and or change his custody status; as a result of his disability. This act denied plaintiff to programs, services, rehabilitative services, and accommodations provided at Delaney Hall in violation of the ADA at 42 U.S.C. 12101 et seq. and Rehabilitation Act at section 504.

DE 7 at 25. Brandt appears to be asserting that defendants discriminated against him on the basis of an unspecified mental illness by not providing him with appropriate accommodations (in the form of his security classification and housing assignment).

As an initial matter, Brandt names only individual defendants, but "individual defendants are not proper defendants in an ADA/Rehabilitation Act claim." *Polynice v. N.J. Dep't of Corr.*, No. 19-16875, 2022 WL 4597433, at *10 (D.N.J. Sept. 30, 2022); *see also Matthews v. Pa. Dep't of Corr.*, 613 F. App'x 163, 169–70 (3d Cir. 2015) (agreeing with the Second and Eighth Circuits that "Title II of the ADA does not provide for suits against state officers in their individual capacities"). Brandt, therefore, cannot maintain his ADA and Rehabilitation Act claims against defendants in their individual capacities.

Additionally, to the extent Brandt asserts official-capacity claims under the ADA or Rehabilitation Act for injunctive or declaratory relief, the claims are moot because Brandt is no

longer detained at ECCF. *See Matthews v. Pa. Dep't of Corr.*, 827 F. App'x 184, 186 (3d Cir. 2020) ("Matthews lacks standing to pursue declaratory relief [under the ADA and Rehabilitation Act] because he was released from prison before filing this lawsuit."); *Gillette v. Prosper*, 852 F. App'x 642, 644 (3d Cir. 2021) ("Regarding Gillette's § 1983 claims for injunctive and declaratory relief under § 1983, we agree with the District Court's conclusion that these claims, as well as those under the ADA and § 504 of the Rehabilitation Act, became moot upon Gillette's transfer from Golden Grove in 2016."); *Sutton v. Rasheed*, 323 F.3d 236, 248 (3d Cir. 2003), as amended (May 29, 2003) ("An inmate's transfer from the facility complained of generally moots the equitable and declaratory claims."); *Johnson v. Tritt*, No. 18-203, 2021 WL 2550207, at *14 (M.D. Pa. June 22, 2021) ("Plaintiff's transfer from SCI Frackville, however, moots his claims for prospective injunctive relief under the ADA and Rehabilitation Act.").

Further, to the extent Brandt seeks punitive damages, they are not available under the ADA or Rehabilitation Act. *See Bowers v. Nat'l Collegiate Athletic Ass'n*, 346 F.3d 402, 429 (3d Cir. 2003); *see also Douglas v. Kustenbauder*, No. 18-00252, 2021 WL 1087666, at *7 (M.D. Pa. Mar. 22, 2021) ("Punitive damages . . . are not available under Title II of the ADA and section 504 of the Rehabilitation Act."). Nor may Brandt recover compensatory damages in the absence of a physical injury. *See Rauso v. Sutton*, No. 99-2817, 2004 WL 1207640, at *11 (E.D. Pa. Mar. 30, 2004) (dismissing claim of disabled inmate plaintiff who could not identify physical injury for compensatory damages); *C.G. v. Pa. Dep't of Educ.*, 734 F.3d 229, 235 (3d Cir. 2013) ("With limited exceptions, the same legal principles govern ADA and RA claims."); *Powell v. Fisher*, 12-01684, 2020 WL 1922637, at *4 (M.D. Pa. Apr. 21, 2020) ("Under the PLRA, claims for compensatory damages for a violation of the ADA are barred without the

identification of any possible physical injury.").[12]  His ADA and Rehabilitation Act claims will accordingly be dismissed.

*     *     *

As explained above, Brandt provides insufficient factual support for his § 1983, ADA, and Rehabilitation Act claims (Counts I through V). Accordingly, the claims are dismissed for failure to state a claim under 28 U.S.C. § 1915(e)(2)(B)(ii).

This is, however, an initial screening, and the Court cannot state that amendment would be futile. The dismissal is thus without prejudice. Brown may file, within 60 days, a proposed amended complaint. *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108, 110 (3d Cir. 2002) (leave to amend claims dismissed on screening should generally be granted unless amendment would be inequitable or futile). Any proposed amended complaint must comply with the pleading standards set forth above.

---

[12] Even if the PLRA did not bar the claim for compensatory damages, the claim would nonetheless be dismissed because Brandt has not, as he must, shown "intentional discrimination under a deliberate indifference standard." *Furgess v. Pa. Dep't of Corr.*, 933 F.3d 285, 289 (3d Cir. 2019). The definition of deliberate indifference in this context "is consistent with [the] standard of deliberate indifference" in § 1983 suits by prison inmates. *S.H. ex rel. Durrell v. Lower Merion Sch. Dist.*, 729 F.3d 248, 263 (3d Cir. 2013). To demonstrate deliberate indifference, a plaintiff must show that defendants "(1) had 'knowledge that a federal protected right is substantially likely to be violated,' and (2) failed 'to act despite that knowledge.'" *See Snider v. Pa. DOC*, 505 F. Supp. 3d 360, 397 (M.D. Pa. Dec. 8, 2020) (quoting *Geness v. Admin. Office of Pa. Courts*, 974 F.3d 263, 274 (3d Cir. 2020)). A plaintiff can show such a right was "substantially likely to be violated" by either "(1) alleging 'a failure to adequately respond to a pattern of past occurrences of injuries like [his]"; or (2) alleging facts that 'prove that the risk of . . . cognizable harm was so great and so obvious that the risk and the failure . . . to respond will alone support finding deliberate indifference." *Matthews v. Pa. Dep't of Corr.*, 827 F. App'x 184, 187 (3d Cir. 2020) (quoting *Haberle v. Troxell*, 885 F.3d 170, 181 (3d Cir. 2018)). "Deliberate indifference does not require a showing of personal ill will or animosity toward the disabled person. However, deliberate indifference must be a deliberate choice, rather than negligence or bureaucratic inaction." *S.H. ex rel. Durrell v. Lower Merion Sch. Dist.*, 729 F.3d 248, 263 (3d Cir. 2013) (cleaned up).

**IV.     Conclusion**

For the reasons stated above, Brandt's complaint (DE 7) is dismissed without prejudice.

Brandt may file a proposed amended complaint within 60 days. An appropriate order follows.


Dated: January 10, 2023                                      /s/ Kevin McNulty

                                                        _____

                                                        KEVIN MCNULTY
                                                        United States District Judge

31