FORM TO BE USED BY A PRISONER IN FILING A CIVIL RIGHTS COMPLAINT

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW JERSEY

John Brandt

2023 JAN 27 P 2 _First Amended_ —
COMPLAINT

(Enter above the full name of the plaintiff in this action)

V.

Guy Cirillo; Tony Brown; Antonio
Pires; Alfaro Ortiz Jr., Office Bivera,
Lt. Crawford, Lionel Anizette,
John Doe(2) Jane Doe(1)

(Enter the full name of the defendant of defendants in this action)

Civil Action No. 22-3752
_____ (KM)

(To be supplied by the Clerk of the Court)

(JRA)

---

## INSTRUCTIONS; READ CAREFULLY

1. This complaint must be legibly handwritten or typewritten, signed by the plaintiff and subscribed to under penalty of perjury as being true and correct. All questions must be answered concisely in the proper space on the form. Where more space is needed to answer any question, attach a separate sheet.

2. In accordance with Rule 8 of the Federal Rules of Civil Procedure, the complaint should contain (1) a short and plain statement of the grounds upon which the court's jurisdiction depends, (2) a short plain statement of the claim showing that you are entitled to relief, and (3) a demand for judgment for the relief which you seek.

3. You must provide the full name of each defendant or defendants and where they can be found.

4. You must send the original and one copy of the complaint to the Clerk of the District Court. You must also send one additional copy of the complaint for each defendant to the Clerk. Do not send the complaint directly to the defendants.

5. Upon receipt of a fee of $402.00 (a filing fee of $350.00, and an administrative fee of $52.00), your complaint will be filed. You will be responsible for service of a separate summons and copy of the complaint on each defendant. See Rule 4, Federal Rule of Civil Procedure.

---

6.    If you cannot prepay the $402.00 fee, you may request permission to proceed in forma pauperis in accordance with the procedures set forth in the application to proceed in forma pauperis. See 28 U.S.C. §1915. (If there is more than one plaintiff, each plaintiff must separately request permission to proceed in forma pauperis.)

7.    If you are given permission to proceed in forma pauperis, the $52.00 Administrative Fee will not be assessed. The Clerk will prepare and issue a copy of the summons for each defendant. The copies of summonses and the copies of the complaint which you have submitted will be forwarded by the Clerk to the United States Marshal, who is responsible for service. The Marshal has USM-285 forms you must complete so that the Marshal can locate and serve each defendant. If the forms are sent to you, you must complete them in full and return the forms to the Marshal.

## QUESTIONS TO BE ANSWERED

1a.    Jurisdiction is asserted pursuant to (CHECK ONE)

_✓_    42 U.S.C. §1983 (applies to state prisoners)

____    Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics, 403 U.S. 388 (1971) and 28 U.S.C. § 1331 (applies to federal prisoners)

If you want to assert jurisdiction under different or additional statutes, list these below:

See attached Preliminary Statement, et al

1b.    Indicate whether you are a prisoner or other confined person as follows:

_✓_ Pretrial detainee

___ Civilly-committed detainee

___ Immigration detainee

___ Convicted and sentenced state prisoner

___ Convicted and sentenced federal prisoner

___ Other: (please explain)_____

2.   Previously Dismissed Federal Civil Actions or Appeals

If you are proceeding in forma pauperis, list each civil action or appeal you have brought in a federal court while you were incarcerated or detained in any facility, that was dismissed as frivolous or malicious, or for failure to state a claim upon which relief may be granted. Please note that a prisoner who has on three or more prior occasions, while detained in any facility, brought an action or appeal in a federal court that was dismissed as frivolous or malicious, or for failure to state a claim upon which relief may be granted, will be denied in forma pauperis status unless that prisoner is under imminent danger of serious physical injury. See 28 U.S.C. § 1915(g).

a.   Parties to previous lawsuit:

Plaintiff(s): ___N|A_____

Defendant(s): __N|A_____

b.   Court and docket number: _N|A_____

c.   Grounds for dismissal: ( )   frivolous   ( ) malicious

( )   failure to state a claim upon which relief may be granted

d.   Approximate date of filing lawsuit: _N|A_____

e.   Approximate date of disposition: _N|A_____

If there is more than one civil action or appeal, describe the additional civil actions or appeals using this same format on separate sheets.

3.   Place of Present Confinement? ___HCCF_____

4.   Parties

(In item (a) below, place your name in the first blank and place your present address in the second blank. Do the same for additional Plaintiffs, if any.)

a.   Name of plaintiff: ___John Brandt_____

Address: 35 Hackensack Ave. Kearny, NJ 07032

Inmate #: 360019

b.  First defendant:

Name: Guy Cirillo

Official position: Warden

Place of employment: Essex County Correctional Facility

How is this person involved in the case?

(i.e., what are you alleging that this person did or did not do that violated your constitutional rights?)

The defendant is a final policymaker and has failed to adequately promulgate or enforce policy that cause Plaintiff harm —

c.  Second defendant:

Name: Tony Brown

Official position: Assistant Warden

Place of employment: ECCF

How is this person involved in the case?

(i.e., what are you alleging that this person did or did not do that violated your constitutional rights?)

The defendant is final policymaker and has failed to adequately promulgate and or enforce policy that cause Plaintiff harm

d.  If there are more than two defendants, attach a separate sheet. For each defendant specify: (1) name, (2) official position, (3) place of employment, and (4) involvement of the defendant.

5.    I previously have sought informal or formal relief from the appropriate administrative officials regarding the acts complained of in the Statement of Claims on page 6.

   ✓ Yes        ___No

   If your answer is "Yes," briefly describe the steps taken, including how relief was sought, from whom you sought relief, and the results.

   I Submitted numeras grievances and Complaints regarding treatment, isolation, and Delaney Hall. The grievances were acknowledged but failed to remedy —

   If your answer is "No," briefly explain why administrative remedies were not exhausted.

   N/A

6.    Statement of Claims

   (State here as briefly as possible the facts of your case. Describe how each defendant violated your rights, giving dates and places. If you do not specify how each defendant violated your rights and the date(s) and place of the violations, your complaint may be dismissed. Include also the names of other persons who are involved, including dates and places. Do not give any legal arguments or cite any cases or statutes. If you intend to allege a number of related claims, number and set forth each claim in a separate paragraph. Use as much space as you need. Attach a separate sheet if necessary.)

   Please see attached Amended Statement of Facts in addition to original Statement. Please accept — thank you — Haines v. Kerner

## Amended Statement of facts

) Plaintiff was detained at ECCF on July 8th, 2021,
) February 24th, 2022. Once detained he was not
perly screened, assessed, or evaluated for medical
mental health and safety. He was placed in a
lding pin with about twenty other inmates that were
o not screened or assessed. Plaintiff remained there
r four days. Everyone had to sleep on a crowded
loor despite that there was no room.

2.) Plaintiff then, after four days without seeing any-
ne, a nurse or doctor was transferred to general
opulation on a maximum custody unit. After about
week on the max unit, where he was isolated
with a roommate, and lockdown for twenty four
and twenty four. He would maybe be let out of his
cell for a shower every three days. Plaintiff was
nterviewed by a doctor, <u>Jane Doe(1)</u>.

3.) Plaintiff had informed her about his extensive
psychiatric history, diagnosis of bipolar-schizeffective
disorder with psychotic features, and need for his
prescribed medication Zyprexa. He also had informed
her about his incarcerations and hospitalizations from
various institutions of the Department of Corrections, (DOC)
and county Jails since he was twelve years old,
including; Ocean County Juvenile Retention Center, Burlington
County Detention Center, Lylod McCorkle Training School for
Boys (Skillmen), Jamesburg Training School, Juvenile Medium
Security Facility (JMSF), Albert C. Wagner Youth Facility,
Yardville Garden Facility, Northern State Prison, Trenton
State Prison, Southwood State Prison, which then led
to every state psychiatric facility by the Dept. of
Human Services. She (<u>Jane Doe(1)</u>) had typed this
information into the computer that was in front of her.

( i )

4) The medical provider for ECCF is <u>Center Family Guidance</u> (CFG), and psychiatrist <u>Dr. John Doe(2)</u> who had a duty and responsibility to treat plaintiff's psychiatric condition, bipolar-schizoeffective disorder with psychotic features, so as not to cause him punishment.

5) Plaintiff has been diagnosed by the N.J. Dept. of Human Services and various doctor, with the same diagnosis, since the age of Eighteen, at the Trenton Vroom Building, (before the construction of the Ann Klein Forensic Center), after serving approximately five years by the New Jersey Dept. of Corrections as a Juvenile.

6) Plaintiff's conditions is a serious medical need and if untreated will result in a life and death situation for him and others. If plaintiff is placed under conditions that are inhumane, excessive isolation, un therauptic environment, a delay of medication, his history has demonstrated that he will decompensate and it is a foreseeable risk of harm to him and others.

7) Plaintiff did not receive any mental health care and treatment at ECCF, despite that he informed <u>Jane Doe 1</u> about his need. As a result, plaintiff by the inmate tablet filed numerous grievances and request for his medication to relieve his suffering. He filed grievances explaining his symptoms of depression and ideations of violence and harm, because of not receiving his medication and the excessive lockdowns at ECCF.

(8) The only responses were your on the mental health list. Plaintiff continued to file grievances for his medication of Zyprexa and he was treated with disregard by the inmate tablet. They would respond

(2)

and say, "your on the list." And they would also say this is not a grievance.

(9)    Plaintiff filed grievances about the isolation practice, which plaintiff reported that it fostered his potential for suicide and violence, and they responded by the inmate tablet (he is unaware of who is responding), that, "Your opinion doesn't matter."

## Symptoms

(10)   Plaintiff began to experience symptoms as a result of inadequate mental health care, and conditions of confinement at ECCF, and the isolation and lockdown policy at ECCF that excerbated his condition by him suffering from suicidal and homicidal ideations, depression, anxiety, insomnia, paranoia, psychosis, and post traumatic stress Disorder (PDSD).

(11)   Plaintiff complained by grievance that he needed his medication Zyprexa. He complaint that he was having symptoms of depression and insomnia and ideations. He complained that the excessive lock-downs were fostering his mental health and violence. He complained that it was wrong, because the security and safety Justification was created by them, administrators failure to assess and separate problematic inmates from non dangerous inmates and to treat their mental health. The facility once again, responded by the inmate tablet, and said, "this is not a grievance, and your opinion doesn't matter."

(12)   Plaintiff eventually saw mental health or psychiatrist Dr. John Doe(2), after about five and

a half months of being there, and he authorized for him to receive his zyprexa and indicated that he would be seeing him again in another six months. Plaintiff contested that, and stated that was to long. The doctor said, that was the policy.

(13) Plaintiff sought continuous care and oversight by medical without any interruptions of his medication. He sought to be treated in the least restricted manner, as he felt the lockdown policy was excessive and not needed as applied to him because it caused more harm than good, by excerbating his mental health problems.

(14) Plaintiff sought to be transferred to Delaney Hall, because it would have been more conducive to his mental health, and alleviated some of the symptoms he experienced as a result of the lockdown policy, and excessive isolation that he experienced that fostered his psychological problems, that has and would be permanent and for life as a result of this type of psychological harm.

(15) Plaintiff sought from Dr. John Doe(2) at his only meeting with him: counselling, medication, and therapy, and to be treated like a human being and not like a war criminel, and for them to alleviate his situation and sought not to be isolated. Defendant Dr.John Doe2, said, these are the policies and that ECCF does not offer what plaintiff requested. Plaintiff did receive the medicatn, which standing alone did not alleviate plaintiff's pain and suffering.

(16) Once, plaintiff was first transferred he-

(4)

remained isolated for about two and a half months, and this was mostly twenty four hours a day. The inmates would maybe one by one come out for a shower every three days for ten minutes. This was very debilitating to plaintiff's mental health.

## Isolation and Lockdown Policy

(17)   The excessive isolations and lockdown policy was not due to any legitimate governmental purpose, or goal, and or security because the administrative defendants, medical defendants, and Essex County were responsible for the violence by not managing the facility based on minimal constitutional standard and safeguards.

(18)   The defendants, Warden Guy Cirillo, Assistent Warden Tony Brown, director Antonio Pires, seeurity director Alfaro Ortiz, Jr., and Medical director Dr. Lionel Anicett are all final policymakers at ECCF and are responsible for the custom and practice of failing to establish or enforce policy to adequatly classify, identify, disclose, assess, screen, for vulnerable inmate members in order to alleviate undue suffering, and for a foreseeable risk of harm, for the orderly running of the institution, and to prevent the psychological impacts that prolonged and excessive isolation could have on an inmate that is defined as a vulnerable inmate member.

(19)   Beyond the prolonged isolation, the ECCF after the inmates were off of isolation, the facility has by a policy, custom and practice" only allowed the inmates out of their cells for half of the day. This policy also ~~was~~ was very impactful on

(5)

plaintiff's psychological well-being. The inmates were let out of their cells from 7:00am until 12:00pm and then from 1:00pm until 5:00pm, and locked down. This custom and practice was excessive in relation to any legitimate governmental purpose and use assigned to it. This policy and custom only increased violence and aggravated plaintiff's psychological problems.

(20)    The defendants, Guy Cirillo, Tony Brown, Antonio Pires, Alfaro Ortiz, Jr., Dr. Lionel Anicett, CFC health provider, and Essex County were in charge of the orderly running and management of the Jail, and responsible for adopting and enforcing policy and practice that directly caused plaintiff's injuries by not seeing that, either that policy were enforced or created that ensured that plaintiff received mental health care at ECCF and or delayed, so that he was not psychologically injured or faced a foreseeable risk of harm at the ECCF.

(21)    The defendants (collectively) did not make sure that policy and procedures, and or adopted, promulgated, and implement much needed policy to make sure that plaintiff as an inmate with vulnerabilities was appropriately classified and received, and obtained medical attention, appropriate to his condition, so that he did not receive psychological damage.

(22)    The defendants (collectively) that are final policy-makers disregarded plaintiff's medical need by a custom and practice, that could have been vital. The defendants, knew that not to properly screen and classify plaintiff or render mental health care without delay would result in psychological

⑥

damage.

(23)    Plaintiff never received the medical care and conditions of confinement, that he was entitled to under the constitution at ECCF, and the governmental harm was greater than what was needed to ensure of security and safety, which resulted in psychological and permanent damage for life.

(24)    Plaintiff was not on isolation status for any disciplinary infraction pursuant NJAC 10A: 4-4.1 et seq., he was not placed on administrative segregation, and there was no legitimate security reasons for such excessive lockdowns, as it was exaggerated and purposeless that only caused harm.

(25)    The administrative defendants, Guy Cirillo, Tony Brown, Antonio Pires, Alfaro Ortiz Jr., and Dr. Lionel Anicett, are final policymakers of ECCF, who had a duty and responsibility to treat plaintiff, had failed to enforce and or adopt, promulgate, and establish classification policies and procedures to screen, discover, identify inmates that are defined as vulnerable inmate members, and who are diagnosed with serious medical needs for safety and mental care, had by a custom and practice disregarded a foreseeable risk of harm to plaintiff and inmates at ECCF, that resulted in conditions of confinement, that caused psychological harm to plaintiff that had no legitimate governmental purpose or goal.

(26)    The defendants, CFG health care provider for ECCF, and medical director Dr. Lionel Anicett, are final policymakers for CFG and

(7)

ECCF for medical care and security, who had a duty and responsibility to treat and not unnecessarily restrain by isolation the plaintiff, that caused psychological harm by failing to enforce and or establish adequate policies and procedures to screen and or discover vulnerable inmate members, and to adopt, promulgate, and or enforce policies and procedures to inform security and classification, and notify and inform administrative defendants and classification of inmates that are defined as vulnerable inmate members, and the effect that certain classifications would have on certain individuals due to mental health issues. The defendants CFG and Dr. Lionel Anciette knew plaintiff was a vulnerable inmate member because it was disclosed when he was screened by defendant Jane Doe (1), and she entered it into their data base. Plaintiff submitted numerous grievances to medical and classification. As a result of the above shortcomings, the defendants by a custom and practice failed to prevent a foreseeable risk of harm to plaintiff and others.

(27)   The defendants, administrative, medical, ECCF, and CFG health provider for ECCF, are responsible for this custom and practice of ECCF that the defendants Officer Bivona, Jr., and Lt. Crawford were following that existing practices that denied plaintiff to adequate treatment and not to be isolated for prolonged periods that caused him psychological damage, by failing to classify him and consider other options other than punishment.

(28)   The administrative and medical defendants, and CFG health provider, who are final policymakers have established by custom and

practice, that although they are aware of inmates that are defined as vulnerable inmates members, they are not immediately seen in a reasonable time frame to prevent a ~~foreseeable~~ risk of harm, and this practice has caused psychological harm to plaintiff by failing to treat and alleviate his symptoms, ~~allow~~ and allowing him to be isolated without medical attention and receive his medication in order to alleviate the effects from isolation, and the lockdown policy.

(29)    As a result, defendant Dr. John Doe(2), the psychiatrist when delaying his assessment and review of plaintiff that took five and a half months, after he was detained at ECCF, was following said custom and practice of CFC and ECCF that denied and delayed plaintiff's medication and treatment, that was a ~~foreseeable~~ risk of harm, and caused psychological damage to plaintiff and pain and suffering that they and Dr. John Doe(2) failed to alleviate.

Additional Claim for Denial of treatment, under the due process clause

(30)    Plaintiff was unreasonably isolated during the course of his detention at ECCF, besides the isolation period once he was initially detained at ECCF and the lockdown policy of half the day, but also randomly the unit was either lockdown frequently for none security reasons, and an exaggerated reasons for it, and the logs and records will demonstrate that the inmates were isolated for the ~~convenience~~ convience

(9)

of the institution and not because of a legitimate security reason that required plaintiff or his unit to be placed on isolation. This custom and pattern was conducted randomly as a routine during the course of his detention, and was consistently like every other week and lasted for days and weeks at a time.

(31) Despite that plaintiff didn't have a serious charge, and his criminal background was remote to justify maximum custody, by the classification defendants, rubber-stamping his classification, acting by a custom and practice, and not having plaintiff assessed, screened, or evaluated in order to determine his mental health status and risk or propensity for violence in relation to his mental health diagnosis, denied him to Equal Protection of law as a "class of one" by denying him to Delaney Hall and the programs and services offered by ECCF, which would have been more conducive than placing him on max and conditions of confinement that only aggravated his condition and resulted in psychological harm, while at the same time others that are similarly situated to him were granted such programs and services.

### Denial of Equal Protection of Law as a Class of One

(32) Other inmates with similar diagnosis and mental health issues, were permitted to participate in Delaney Hall's programs and services, but because plaintiff had a history of NGRI, he was denied treatment and program and services in violation of the Equal Protection of the Law Clause, there was no rational basis for the different treatment.

(10)

## PRELIMINARY STATEMENT

(1)     Plaintiff was an inmate confined at the Essex County Correctional Facility (ECCF) as a pretrial detainee and states that he did not lose the rights to the U.S. Constitution once he entered the facility at ECCF. Plaintiff's claims are brought under the substantive and procedural due process clause, as well as the Equal Protection of Law Clause of the 14th Amendment of the U.S. Constitution. Plaintiff's complaint is brought under 42 U.S.C. 1983; subject matter jurisdiction at 28 U.S.C. 1331 and 1334, the American with Disabilities Act and Rehabilitation Act at 42 U.S.C. 12101 et seq., declaratory relief, prospective relief, and injunctive relief as available under law.

(2)     Plaintiff states that as a result of the administrators at the facility not complying with minimum requirements of due process when placing him on max custody status; denied him access to programs, services, and substantially different confinement conditions that is provided at its privately-owned section of the jail as a pretrial detainee. Plaintiff also states an Equal Protection of Law claim, as a result of denying him to such programs, services, and substantially different living conditions of confinement; while at the same time allowing similarly situated inmates to enjoyment of better conditions in a lesser restrictive setting or restraints, as the result of not complying with minimum requirements of due process. Thus, as the result of the arbitrary and capricious decision by the administrative defendants, plaintiff is denied to significant and substantially different living conditions of confinement which are lesser restrictive and less restraints in which he otherwise would be entitled to under the 14th Amendment of the U.S. Constitution, which resulted in restraints and punishment. Additionally, plaintiff claims as a result of the administrative defendants' actions and failures of policies, practices, and or custom and pattern, adopted by ECCF is the cause and are responsible for plaintiff's constitutional violations.

1

**PLAINTIFF**

(6)     Plaintiff, <u>John Brandt</u>, # 360019, who is a pretrial detainee presently confined at, the Hudson County Correctional Facility and Rehabilitation Center, New Jersey 07032.

**DEFENDANTS**

(7)     The first defendant is warden <u>Guy Cirillo</u>, the head warden at ECCF, located at 354 Doremus Ave., Newark, New Jersey 07105. He is responsible for adopting policy and procedures and to ensure that they are being followed. He is being sued in his individual and official capacities.

(8)     The second defendant is <u>Tony Brown</u>, who is assistant warden at ECCF, located at 354 Doremus Ave., Newark, New Jersey 07105. He is responsible for adopting policy and procedures and to ensure that they are being followed. He is being sued in his individual and official capacities.

(9)     The third defendant <u>Antonio Pires</u>, who is Associate Warden at ECCF, located 354 Doremus Ave., Newark, New Jersey 07105. He is responsible for adopting policy and procedures and to ensure that they are being followed. He is being sued in his individual and official capacities.

(10)     The fourth defendant <u>Alfaro Ortiz</u>, Jr., who is the security director at ECCF, located 354 Doremus Ave., Newark, New Jersey 07105. He is responsible for adopting policy and procedures and to ensure that they are being followed. He is being sued in his individual and official capacities. As security director he is charged with failure to establish a classification committee that can properly screen and classify inmates; including plaintiff for the need of a foreseeable risk of harm and propensity for violence, or need for mental health and medical treatment; which corresponds to the appropriate custody status and need for restraints and

restrictions. The ECCF has no legitimate classification operation or process, and are hiding

behind secrecy and security reasons that don't exist, or when they do it's as a result of their

failure to properly manage.

(11)    The fifth defendant Officer Bivona, Jr., oversees the classifying of inmates at

ECCF without any policies and procedures when classifying inmate and only relies upon records

without any subjective inquiry; and such decision are arbitrary and capricious. He is being sued

in his individual and official capacities.

(12)    The sixth defendant Officer Crawford, oversees the classifying of inmates at

ECCF without any policies and procedures when classifying inmate and only relies upon records

without any subjective inquiry; and such decision are arbitrary and capricious. He is being sued

in his individual and official capacities.

(13)    The seventh defendant, Lionel Anicette, who is the medical director at ECCF and

is charged with failure to establish polices and procedure to properly screen and classify inmates;

including plaintiff, for a foreseeable risk of harm and propensity of violence and need for

medical oversight and care and treatment, which subjected plaintiff to more restraints than

necessary. He is being sued in his individual and official capacities.

## STATEMENT OF FACTS See attached Amended to this

(14)    Plaintiff was previously confined at the Essex County Correctional Facility

(ECCF) on July 8th, 2021, as a pretrial detainee on a non-violent 3rd degree burglary charge. He

was transferred to a max custody status unit, that were mostly homicide charges and violent

offenders. Plaintiff was ordered detained pursuant to N.J.S.A. 2A:162-15 et seq. New Jersey's

Criminal Justice Reform Act (CJRA). He was released on September 28th, 2021.

4

(3)     Plaintiff also brings a claim as a result of the administrative defendants' failure to properly screen and classify inmates for mental health problems and a propensity for violence; which has led to widespread violence and security issues in the facility that was the cause of him being placed on excessive isolation that resulted in punishment and caused him harm in violation of the Due Process Clause of the 14th Amendment of the U.S. Constitution.

(4)     Plaintiff also brings claims under the American with Disabilities Act at 42 U.S.C. 12101, et seq., and Rehabilitation Act at section 504, as a result of the administrative defendants' denying him to programs services, and accommodations at Delaney Hall; because of his criminal background, which in part, includes being found not guilty by reason of insanity as a result of a disability, which they have reviewed in his criminal background and thus discriminated against his disability and excluded him from Delaney Hall. The only difference between plaintiff's criminal background and inmates at the private section at Delaney Hall is his previous NGRI status. Plaintiff contends that he was detained under conditions that were contrary to the public policy of the state and its objectives; by the defendants, who did not classify him properly, and denied him to the opportunity of rehabilitative services, and lesser restrictive conditions of confinement to achieve those goals.  The N.J. statutes for rehabilitation and regulations for the purpose of treatment and services; and its legislative intent, is meaningless if they don't work in practice, because of the deliberate disregard by administrative discretion that lacks sound reasoning behind such actions.

(5)     Plaintiff further states that pursuant to 42 U.S.C. 1997(e) (PLRA) that he has exhausted all available administrative remedies made available to him at ECCF to no avail and received no relief. Plaintiff had filed numerous requests, grievances, and a written appeal to the administrators.

2

(15)    While he was detained under this detention he had requested to be transferred to the ECCF's privately owned and managed facility or section at Delaney Hall. The custody officer or person responding to the request by the inmate tablet indicated that plaintiff was not eligible due to his max custody status and criminal history. Plaintiff subsequently filed a grievance based on the denial and that he was not properly classified and criminal background alone cannot be used to deny him the lesser restraints and conditions as a retrial detainee, and that the restraints and conditions placed upon him were unreasonable and served no penological purpose.

(16)    Plaintiff is currently re-detained on a new charge at ECCF as a pretrial detainee on a non-violent 3rd degree burglary offense since February 24th, 2022. Plaintiff once again was detained pursuant to N.J.S.A. 2A:162-15 et seq., (CJRA).  Plaintiff was detained by the court under the CJRA not because he was deemed a danger to the community, but only because he failed to appear in court numerous times for municipal court offenses classified as disorderly person offenses. He was not deemed dangerous and or in need of detention because of the risk factor of danger to the community under the CJRA.

(17)    At some point, plaintiff was classified (rubber-stamped) by the administrative defendants and transferred to a max custody unit at 2C3. Since then, although the administrative defendants Guy Cirillo, Tony Brown, Antonio Pires, Alfaro Ortiz, Jr. and Lionel Anicette are required to review such custody level every 30 days, they have failed to do so and are rubber stamping his custody status without any minimum requirements of due process.  Plaintiff has not been seen by any one in relation to his custody status or received any notice.

(18)    Plaintiff was detained at ECCF and upon initial intake he was not screened. He was placed in a holding pin with about 20 to 30 other inmates all that were not screened for

medical or security reasons. Plaintiff than was placed on quarantine for about two weeks. Based on his criminal background and; which included, not guilty by reason of insanity plaintiff was placed on max custody status.

(19)    Plaintiff than was placed in general population on the max unit and remained there with no possibility of ever acquiring another custody level or change, despite he only had a minor criminal offense and did not engage in no institutional infractions.

(20)    Although the ECCF internal policies claim that inmate's classification status is reviewed every month this is not true in practice. The facility has never reviewed plaintiff's custody status, nor in accordance with predicate criteria to see that he is appropriately classified and placed under proper restraints.

(21)    Since plaintiff's confinement under max custody status, plaintiff has sent in a request to be transferred and appropriately classified in accordance with law to minimum or medium custody and transferred to the facility's privately-owned section at Delaney Hall. The custody officer responded by the inmate tablet and once gain indicated that plaintiff was not properly classified and criminal background alone cannot deny him to more considerate conditions of confinement than is needed, or the lesser restrictive conditions as a retrial detainee. The administrative defendants denied plaintiff's review and custody status and transfer request and grievance by way of the inmate tablet.

(22)    The administrative defendants', Warden Guy Cirillo, Assistant Warden Tony, Associate Warden Antonio Pires, and security director Alfaro Ortiz, Jr., and Lionel Anicette has an obligation to create, implement, train, and oversee that there are is a classification policy and procedures at ECCF that are adequate in accordance with law.

6

(23)    The defendants have failed to do that which is required of them; and have actual knowledge and personal involvement of said failures, not just by their required oversight, but plaintiff's numerous request and grievances to the administrative defendants.

(24)    On information and belief, administrative defendants and county of Essex authorized, tolerated as institutionalized practices, and ratified the misconduct as detailed by the fact that the New Jersey Department of Corrections; who pursuant to N.J.A.C. 10A:31-1.1 conduct monthly inspections in order to oversee and make sure that the minimum requirements of the Constitution is maintained, failed their inspection and ordered that no sentenced inmates can be housed at the Essex County Correctional facility as a safety precaution, and ordering them to be transferred to Hudson County Correctional Facility and Rehabilitation Center.

(25)    The administrative defendant Warden Guy Cirillo, Assistant Warden Tony Brown, Associate Warden Antonio Pires, and security director Alfaro Ortiz, Jr., and Lionel Anicette were aware of complaints' and had actual knowledge of the inadequacies, lack of medical treatment, failure to classify and manage the facility in order to maintain security and safety issues; rather than complete isolation of the inmates, which just fostered more violence of inmates at the ECCF, and caused plaintiff to be denied of his right not to be excessively placed on isolation.

(26)    Plaintiff was further informed by his regular unit officer, that he is unaware of any classification committee or if ECCF actually has one. The officer does not submit any special reports to classification staff or any one in relation to any particular observations of any inmates on his unit. No one is aware of a classification committee or staff members at ECCF that classify inmates.

7

(27)    The administrative defendants at ECCF have not established an appropriate or adequate classification I.C.C., that is comparable for those inmates that are sentenced at N.J.A.C. 10A:9-3.1; as pretrial detainees should be granted similar or greater protections. The administrative defendants at ECCF has failed to establish a classification committee that is comparable to N.J.A.C. 10A:9-3.1 and with minimum requirements of due process when classifying pretrial detainees at ECCF. N.J.A.C. 10A:31-22.1

(28)    The administrative defendants; Warden Guy Cirillo Associate Warden Tony Brown, Assistant Warden Antonio Pries, director Alfaro Ortiz, Jr., and Lionel Anicette, have an obligation to exercise administrative discretion when restricting the freedoms and restraints of a pretrial detainees and have failed to do so when placing plaintiff on max custody status indefinitely by such custom, practice, and or pattern at the ECCF.

(29)    The administrative defendants' failure to comply with plaintiff's minimum requirements of due process by a custom, practice, and procedure and standard operating procedures is deliberate indifferent towards his rights as they had actual notice by request and grievances; which they disregarded and denied by response, regarding the denial of programs, services and his restraints.

(30)    Plaintiff states that pursuant to New Jersey Statutes at N.J.S.A. 2A:162-15 et seq. (CJRA); N.J.S.A. 30:4-82.5, and N.J.S.A. 30:82.6 (limitations on use of isolated confinement in correctional facilities), and New Jersey regulations under N.J.A.C. 10A grants him liberty interest greater than those afforded to convicted and sentenced inmates.

(31)    Thus, plaintiff has a liberty interest in his detention determination made by the judge to the least restrictive conditions. This applies with equal force in the context of the administrative defendants' obligation to exercise discretion in order to be consistent with due

process of law; when placing him under various levels of custody status and conditions made available in the detention facility.

(32)    The facility managers and administrative defendants never considered any less restrictive interventions and why less restrictive interventions are insufficient to accomplish the facility's safety goals.

(33)    The statutes and regulations grant him a liberty interest in his detention and confinement conditions, which should be consistent with one another pursuant to due process. Plaintiff was not confined under CJRA due to dangerousness, but only as the result of his failure to appear for municipal court dates.

(34)    Although N.J.A.C. 10A:31-2.2 mandates that county facilities shall establish written policies and procedures for classifying inmates; which includes the reassignment or transfer of inmates from one program and/or facility to another, intake classification of inmates, and review, the administrative defendants at ECCF have failed to do so, and nor allowed plaintiff the opportunity to engage and receive comparable programs and services that he otherwise was entitle too.

(35)    Plaintiff states that he was not classified by any subjective criteria, inquiry, and or procedure other than his criminal background that is antiquated. Plaintiff has had no institutional violence or disciplinary infractions while detained at ECCF previously or presently.

(36)    Plaintiff was not reviewed by classification committee personally, by notice, or any other meaningful way to respond. Thus, such denial does not comport with adequate procedural due process to protect his rights and results in punishment. Plaintiff received no explanation, hearing, or respond to any allegations or review.

(37)     The administrative defendants did not determine facts and policy that are known. The absence of such subjective inquiry; other than plaintiff's criminal background which is to old, in order to properly classify him is arbitrary and capricious. There was no subjective inquiry into the mental state of the defendants in order to make a valid discretionary decision.

(38)     Plaintiff under these facts and circumstances has no prospect of any opportunity in the near future to gain access to these services, or programs and to minimum custody, lesser restrictive conditions of confinement at Delaney hall, as a result of his antiquated criminal history and previous NGRI status.

(39)     Plaintiff is being detained under conditions that are more restrictive than necessary to ensure of the need of such restraint and custody status. The custody status at issue is integral to plaintiff's denial of programs, services, and liberty interest at stack which are significantly better than those on max status in the main building at the facility.

(40)     The actions and inactions of the administrative defendants are substantially burdening a fundamental right that lacks a compelling governmental interest. Plaintiff's custody status as a pretrial detainee is arbitrary and capricious; absent of proper administrative investigation, review, assessment, or subjective or personal observation of plaintiff. The administrative defendants should not have generalized and individualized in all factual situations; such as to only rely upon plaintiff's criminal background without any subjective inquiry.

(41)     The administrative defendants failed to consider favorable information and dealt with plaintiff in a perfunctory fashion. There was no subjective evaluation in order to make a valid determination of prediction of future behavior and no opportunity to present his views

10

personally at each review. The administrative decision was not based on any assessments, evaluation, or current impressions or behaviors.

(42)   As the result of an administrative custom, practice, and pattern the administrative defendants' Warden Guy Cirillo, Assistant Warden Tony Brown, Associate Warden Antonio Pires, director Alfa Ortiz, Jr., and medical director Lionel Anicette are responsible for creating, implementing, and overseeing; have failed to provide plaintiff with any process to address his placement on max custody status and subjective reasonable justification for his denial to be transferred to programs, services, and to the least restrictive conditions necessary for the purpose of detention and confinement.

(43)   Plaintiff has absolutely no procedural due process available in order to challenge his substantive due process right to the least restrictive conditions and state-created liberty interest under state statutes and regulations to be transferred to programs, services, and substantially better conditions of confinement provided at the ECCF's Delaney Hall section.

(44)   As a result, under these set of facts the administrative defendants did not exercise any discretion in placing plaintiff on max custody status. By the failure of the defendants to exercise administrative discretion resulted in plaintiff being denied rights and privileges under the U.S. constitution, federal states, and state-created liberty and privileges.

(45)   The administrative defendants have not complied with the regulation at N.J.A.C. 10A:31-22, as the result ECCF lacks adequate classification policies and procedures; which has allowed plaintiff to be placed on max custody.

(46)   The New Jersey regulation at N.J.SA.C. 10A:31-22.2(a)(1), if used to classify plaintiff under the objective criteria at section (2) and reception system plaintiff would not have been placed on max custody. Plaintiff's criminal history would be to old under the objective

system and under the reception system it would have required review of aggressive and passive/dependent behaviors. It would have required some form of hearing, observation or report. The defendants did not comply with either of the classifying systems when placing plaintiff on max custody indefinitely.

(47)    Despite that the defendants are denying plaintiff to the lesser restrictive conditions of confinement, because of his criminal background; they allow similarly situated inmates with significantly more sever and serious crimes and criminal back grounds than plaintiff's to be placed on minimum custody and authorize the transfer to Delaney Hall In some case they have authorized for inmates on max custody status to be transferred as the security level is similar or greater than that at the main building at ECCF.

(48)    However, the conditions of confinement are substantially better, more liken to a "country club," than the excessive lock downs under harsh conditions at the main building at ECCF, and lesser restrictive and restraints. This practice denies him to equal protection of law and the distinction between himself and other inmates is not reasonably related to any penological purpose. The different treatment of plaintiff runs a foul of the equal protection clause because the improper classification does not serve any governmental objective or purpose.

(49)    The only difference between plaintiff's criminal background; which is minor in comparison to some inmate at Delaney Hall, is he has been previously found not guilty by reason of insanity for a burglary offense due to his disability. The defendants are aware of this fact and have knowledge of it, because it is in his criminal background that they keep saying makes him ineligible.

12

(50)    As a result of the administrative defendants' actions and inactions plaintiff is being overly restricted and denied programs, services, and less restrictive conditions at Delaney hall.

(51)    Please take judicial notice: **Essex County Correctional Officer PBA Local No. 382 v. Essex**, 2016 N.J. Super. Unpub. Docket No A-3806 15T2 (**Essex County Corr. Officers PBA Local No. 382 v. County of Essex**, 439 N.J. Super. 107 (App. Div. 2014):

> The mission of Delaney Hall is to provide a healthy, drug free, safe and secure environment for provision of treatment and education services that focus on changing addictive and criminal behavior. Provides its participants with the knowledge and skills necessary to lead productive life styles prior to reintegration into their communities."

(52)    Plaintiff may not have returned based on this mission statement if he was granted such opportunity; based on their own words.

(53)    The conditions at Delaney Hall are extremely different. The rights and privileges at Delaney Hall are never restricted or restrained; such as recreation and library area is always available, and their freedom and liberty interest to be free from lock downs or isolation is never denied. There are a multitude of privileges and rights granted to the inmates at Delaney Hall; such as access to venting machine, programs, and services and reintegration assistance and planning. Plaintiff would have benefitted from; considering his charge is minor in comparison to most inmates at Delaney Hall, and will be released sooner than most there.

(54)    The ECCF has various levels of custody status and security within the facility. The conditions at the main building at ECCF: plaintiff is excessively confined and locked in a jail cell at a minimum of 23 hours a day on average. Plaintiff barely ever gets access to the recreation area attached to the unit, as the result of too many inmates, and so on average maybe every other day for about 30 minutes. Although plaintiff has not been classified as an inmate

13

placed under administrative segregation; the conditions of confinement on unit 2C3 are basically

the same on an average basis. Plaintiff has not engaged in any disciplinary infractions and has

been a role model inmate.

## **WIDE-SPREAD VIOLENCE AT ECCF**

(55)     Plaintiff was constantly placed on isolation status as a result of defendants;

warden Guy Cirillo, Associate Warden Tony Brown, Assistance Warden Antonio Pires, director

Alfaro Ortiz, Jr., and medical director Lionel Anicette, Officer Bivona, and Lt. Crawford's

failure to classify inmates and screen them for a propensity of violence and proper classification.

As a result, plaintiff was excessively placed on isolation for weeks at a time, because of the

wide-spread violence in the facility. The ECCF has numerous homicides within the past year as a

result of defendants' Guy Cirillo, Tony Brown, Antonio Pires, Alfaro Ortiz, Jr., Lionel Anicette,

Officer Bivona, and Lt. Crawford's failure to screen and classify inmates; which has caused

plaintiff to be excessively locked down and on isolation, due to all of the violence. Their way of

managing the facility was lock the facility down, rather than screen and classify dangerous

individuals as the result of mental health problems or propensity for violence, that resulted in

plaintiff being placed on isolation.

(56)     Plaintiff falls under a vulnerable group as a result of being diagnosed with a

mental health condition, a serious medical need, and should not have been placed on lock down

for prolong periods with no mental health treatment, pursuant to N.J.S.A. 30:4-82.6, as it fosters

mental health problems and violence.

(57)     As a result of defendants; failure to properly classify inmates in general

population, or for restrictive confinement, has led to wide-spread violence in the facility; which

14

is the proximate cause of plaintiff's excessive isolation, under conditions that were deliberate indifferent and resulted in punishment and damage.

(58)    Plaintiff, as a result of defendants Cirillo, Brown, Pires, Ortiz, Anicette, Bivona, and Crawford's actions and omissions he suffered from unreasonable restraints and contributed to psychological harm and suffering. Plaintiff suffered and continues to suffer from serious mental anguish, psychological and emotional distress, fear, anxiety, embarrassment, severe emotional trauma, and loss of enjoyment of life; which was fostered by his denial of treatment and extreme isolation. Brandt v. Morgan, et al, civil action No. 22-3379(KM)(JRA)

(59)    As a result of the defendants' reckless and callous indifference to plaintiff's federally protect rights and a direct and proximate result of the defendants' actions, plaintiff suffered and continues to suffer from serious mental anguish, psychological and emotional damage; which is permanent.

(60)    The administrative defendants' actions were deliberate indifferent towards plaintiff's liberty interest to be free from unreasonable restraints and isolation, because it was convenient for them to lock the facility down; rather than classify and treat, separate, and manage the institution's legitimate security issues and at time s manufacturing such cause and allowing the facility to go into lock down.

(61)    The ECCF and Delaney Hall are agencies receiving federal financial assistance and are a public entity. The private contract with Delaney Hall to provide services to inmates at ECCF acts under "color of state law" and the ADA and Rehabilitation Act.

(62)    Defendant Officer Bivona and Lt. Crawford are responsible for conducting the classification of inmate at the ECCF and have failed to exercise administrative discretion when placing and keeping plaintiff on max custody status at ECCF. They never observed or assessed

plaintiff during the course of his detention at ECCF. They have not seen and don't even know what he looks like in order to classify him in accordance with law.

(63)    The administrative defendants; warden Guy Cirillo, Associate Warden Tony Brown, Assistant Warden Antonio Pires, director Alfaro Ortiz, Jr. and Lionel Anicette are charged with failing to train, monitor, and supervise defendant officer Bivona and Lt. Crawford at ECCF and allowing them unbridled and unchecked discretion without any structure.

(64)    The defendant officer Bivona and Lt. Crawford have usurped power and hide behind secrecy and security reasons when none exist; in unbecoming a public employees and dictatorship that is deliberate indifferent to plaintiff's right under the U.S. Constitution.

(65)    Plaintiff was released from ECCF while on max custody status with no opportunity to rehabilitate and progress, but with every opportunity and propensity for recidivism on August 16th, 2022. Plaintiff was subsequently arrested on September 29th, 2022, once again for a non-violent 3rd degree burglary offense, and was ordered detained at the Hudson County Correctional Facility and Rehabilitation Center (HCCF). Plaintiff was screened within an hour by a nurse, placed on a medical unit within two hours for detox; and about a week later was classified by the Hudson County administrators based on the same criminal background, and same type of offense of a non-violent 3rd degree burglary.  However, he was placed on minimum custody status by the administrators that used the same criteria under title 10A. Plaintiff, then requested to be placed in the integrity program within the HCCF, which is in the least restrictive setting and conditions of confinement, that is similar to Delaney Hall.  Plaintiff's request was approved and he was transferred and is participating in such services and programing. This demonstrates that ECCF administrative defendants, did not classify him properly and or offer

him the opportunity of rehabilitative services, and in the least restrictive conditions of

confinement to achieve those goals.

## CLAIMS OF RELIEF

### COUNT I

**Denial of Substantive and Procedural Due Process of Law under the 14th Amendment of the U.S. Constitution by Administrative defendants Failure to Classify Plaintiff Properly**

(66)    By the failure of the administrative defendants; Warden Guy Cirillo, Assistant

Warden Tony Brown, Associate Warden Antonio Pires, director Alfaro Ortiz, Jr., and Lionel

Anicette, to create, implement, standard operating policies and procedures, and allowing a

custom and pattern not to properly classify plaintiff is a substantive and procedural due process

rights under the 14th Amendment of the U.S. Constitution; which has resulted in punishment and

damage.

(67)    By the failure of the administrative defendants to train, monitor, and supervise the

defendant officer Bivona and Lt. Crawford has denied plaintiff to his substantive and procedural

due process and state-created liberty interest under the 14th Amendment of the U.S. Constitution;

which has resulted in punishment and damage.

## COUNT II

**Denial of the Substantive and Procedural Due Process of the Law under the 14th Amendment of the U.S. Constitution; by Officer Bivona, and Lt. Crawford Failing to Exercise Administrative discretion**

(68)     By the failure of officer Bivona and Lt. Crawford defendants to exercise administrative discretion when making the decision to place him on max custody; although he is eligible and should be placed on minimum custody is a violation of plaintiff's substantive and procedural due process, state-created liberty interest, and federal and state laws and regulations is a violation of his 14th Amendment of the U.S. Constitution; which resulted in punishment and damage.

(69)     By the failure of the administrative defendants and officer Bivona and Lt. Crawford to afford plaintiff minimum requirements of due process when classifying and denying his request to go to Delaney Hall, violated his due process rights under the 14th Amendment of the U.S. Constitution; which were deliberate indifferent and resulted in punishment and damage.

(70)     By the administrative defendants and officer Bivona and Lt. Crawford; while acting under color of state law, deprived plaintiff of the equal protection of the law, by not affording him the rights as those similarly situated and similar backgrounds, is a violation of the Equal Protection Clause of the U.S. Constitution.

(71)     By the administrative defendants; and officer Bivona and Lt. Crawford, solely relying upon plaintiff's criminal background alone, without exercising administrative discretion has enhanced plaintiff's criminal punishment in violation of the Ex Post facto Clause of the U.S. Constitution.

(72)    As the result of the defendants'; and inactions has resulted in deliberate indifference toward plaintiff's overly restricted confinement, without any reasonable penological justification, which has resulted in punishment in violation of the 14th Amendment of the U.S. Constitution.

## COUNT III

**The Administrative defendants and Officer Bivona and Lt. Crawford Discriminated against plaintiff as result of his Disability under the ADA and Rehabilitation Act**

(73)    The administrative defendants and officer Bivona and Lt. Crawford discriminated against plaintiff; because of his criminal record included NGRI records, plaintiff's previous (NGRI) **Krol** status, which they reviewed and decided not to transfer him to Delaney Hall and or change his custody status; as a result of his disability. This act denied plaintiff to programs, services, rehabilitative services, and accommodations provided at Delaney Hall in violation of the ADA at 42 U.S.C. 12101 et seq. and Rehabilitation Act at section 504

## COUNT IV

**Denial of the Substantive Component of the 14th Amendment of the U.S. Constitution by the Administrative Defendants Causing Excessive Isolation**

(74)    As a result of the administrative defendants, unreasonable actions to failure to properly classify inmates for mental health problems and for a propensity of violence; which caused wide-spread violence in the facility, that led to plaintiff being excessively placed on isolation, and causing psychological harm and resulted punishment, is in violation of the Due Process Clause of the 14th Amendment of the U.S. Constitution.

## COUNT V

**Denial of the Substantive Due Process Clause under the 14th Amendment of the U.S. Constitution, by the Administrative Defendants, Officer Bivona and Lt. Crawford, failing to consider less restrictive conditions of Confinement, and Placement in the Appropriate Setting.**

(75)    By plaintiff being detained under N.J.S.A. 2A:162-15 et seq., found by the court only on his risk of flight and not dangerousness to the community, and N.J.S.A. 2A:162-17(a)(2) granting him the right that shall be to the least restrictive conditions; and N.J.S.A. 30:4-82-6 granting him the right as a vulnerable group to the least restrictive conditions, or for the facility and defendants to consider lesser restrictive alternatives, by the defendants' failure to consider lesser restrictive conditions has denied plaintiff to due process of law under the 14th Amendment of the U.S. Constitution.

(76)    By the administrative defendants and Officer Bivona and Crawford's failure to exercise discretion once plaintiff was detained in order to determine the appropriate level of restrictions and thus properly classify him within the institution is inconsistent with his due process rights under his State-created liberty interest at N.J.S.A. 2A:162-15 et seq. and N.J.S.A. 30:4-82-6(limitation on the use of isolation) and regulations at title 10A for classifying pretrial detainees under the Due Process Clause of the 14th Amendment of the U.S. Constitution. This has resulted in punishment, because he has not been convicted and is presumed to be innocent.

(77)    The fact plaintiff has a liberty interest under N.J.S.A. 2A:162-15 et seq., in order to be lawfully detained, as he has not been adjudged guilty of a crime, but only a judicial determination of probable cause as a prerequisite to extend restraint of his liberty, and thus this liberty interest cannot be left at the door of the detention center.

(78)     Plaintiff's substantive due process rights to the least restrictive conditions of confinement has been violated by the administrative defendants and Bivona and Crawford by them failing to classify or consider plaintiff 's right to the least restrictive conditions in accordance with due process of law under the 14th Amendment of the U.S. Constitution, which has resulted in punishment.

## RELIEF

(79)     Plaintiff seeks a federal injunction and a declaratory judgment. Plaintiff seeks compensatory and punitive damages; and prospective relief, separately under appropriate remedies and relief for individual capacities and official capacities against each defendant and agency and entity suable under federal statutes and remedies for money damages and injunctions. Plaintiff seeks unspecified amount of compensatory and punitive damages.

(80)     Plaintiff request a jury trial.

## CERTIFICATION IN LIEU OF OATH

I, John Brandt, hereby certify that all of the foregoing information is true and correct; and found to be willfully false, I am subject to punishment.

Signed 20 day of ~~_____~~ 2023

By: _____

John Brandt, pro se

21

See attached Statement

7.  Relief

    (State briefly exactly what you want the Court to do for you. Make no
    legal arguments. Cite no cases or statutes.)

    See original and amended — Thank you

*See attached —*

8.    Do you request a jury or non-jury trial? (Check only one)

(✓) Jury Trial ( ) Non-Jury Trial

I declare under penalty of perjury that the foregoing is true and correct.

Signed this __20th__ day of __January__ , 20__23__

_____
Signature of plaintiff*

(*EACH PLAINTIFF NAMED IN THE COMPLAINT MUST SIGN THE COMPLAINT HERE. ADD ADDITIONAL LINES IF THERE IS MORE THAN ONE PLAINTIFF. REMEMBER, EACH PLAINTIFF MUST SIGN THE COMPLAINT).



John Brandt # 360019
HCCF
35 Hackensack Ave
Kearny NJ 07032





CLERK
US DISTRICT COURT
DISTRICT OF NEW JERSEY
RECEIVED

2023 JAN 27 P 2:11

Office of the Clerk

United States District Court
Martin Luther King Jr.
Fed. Courthouse & Bldg.

50 Walnut Street
Newark, NJ    07102